Robert Lee REED, Petitioner–Appellant,

v.

The PEOPLE of the State of Colorado, Respondent–Appellee.

No. 86SA186.

Supreme Court of Colorado, En Banc.

Nov. 2, 1987.

Robert Lee Reed, pro se.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Curt P. Kriksciun, Asst. Atty. Gen., Denver, for respondent-appellee.

VOLLACK, Justice.

The petitioner-appellant, Robert Lee Reed (hereinafter Reed or the defendant) appeals from the district court's order dismissing his Motion to Show Cause. His motion claimed that a detainer had been wrongfully placed in Reed's Colorado Department of Corrections file, resulting in violations of his constitutional rights. We hold that the district court properly dismissed the defendant's motion, and affirm the district court's order.

### I.

At the time of these proceedings, the defendant was incarcerated in the Colorado Department of Corrections (hereinafter DOC). While incarcerated, a detainer was entered in Reed's DOC file; the detainer indicated that Reed was wanted by the Arizona authorities because he had an unserved sentence in Arizona. Reed had been convicted of several felonies in Arizona in 1981, and the Arizona court had imposed an 11.25 year prison sentence. The record is not entirely clear, but evidently Reed escaped from the Arizona DOC sometime between 1981 and 1983, leaving part of his Arizona sentence unserved.

After escaping from the Arizona DOC, the defendant traveled to Colorado. He then committed felonies in this state, and was convicted and sentenced to the Colorado DOC. After learning that Reed was incarcerated in Colorado, Arizona authorities filed this detainer to notify Colorado authorities that after Reed completed his Colorado sentence, he was wanted by Arizona because of his unserved sentence

there. The detainer was placed in Reed's DOC file.

The defendant filed a pro se Motion to Show Cause, asking the Fremont County District Court to issue an order requiring the Colorado DOC superintendent to show cause "why a purported detainer from the State of Arizona was permitted to be lodged against the appellant at his place of confinement." The district court ordered the motion dismissed, ruling that the detainer was only a flagging device to alert the Colorado authorities that Arizona had an interest in Reed. The court noted that Reed might be subject to extradition upon completion of his Colorado sentence, and that the "Detainers Act," §§ 24–60–501 to –507, 10 C.R.S. (1982) was not applicable.[1] This action was evidently taken without a hearing.

The defendant filed a Motion for Reconsideration with the district court, arguing that the detainer was not a flagging device, but rather a "real active detainer which has collateral consequences attached to it." [2] In the Motion for Reconsideration, Reed for the first time described his earlier Motion to Show Cause as a "Habeas Corpus Action." The Motion for Reconsideration

was denied. Reed then appealed to this court, asking that we reverse the trial court's dismissal of his Motion to Show Cause (which he describes in his Opening Brief as "essentially a writ of habeas corpus").

Reed's argument is that placement of the detainer in his DOC file deprived him of his constitutional rights, because it violated both § 16–19–104, 8A C.R.S. (1986) (governing requirements of extradition demands),[3] and our holding in *Norrod v. Bower*, 187 Colo. 421, 532 P.2d 330 (1975). In response, the Attorney General contends that (1) defendant's appeal is not properly before this court as a habeas corpus proceeding, (2) the detainer was nothing more than a "flagging device" used to alert Colorado officials of Arizona's continued interest in Reed due to his unserved sentence there, and (3) even if Reed's confinement was adversely affected by the detainer in his file, his inmate status does not provide for a constitutional right to a particular classification within a correctional institution.

## II.

### A.

A writ of habeas corpus is a limited remedy, governed by the Colorado Habeas

---

1. The order of dismissal stated: "[T]he 'detainer' is a flagging device only as Petitioner–Defendant would have to be extradited by Arizona at such time, the Detainers Act not being applicable."

2. The detainer contained information regarding the defendant's unserved sentence in Arizona. Reed stated that this information affected his Colorado DOC classification score, which is apparently why he argues that "[DOC] utilizes it as positive active felony detainer."

   [A] 'classification review' is a document prepared periodically with respect to individual prisoners by staff members of the department of corrections for the purpose of reevaluating the degree of security to be maintained with respect to the prisoner and reassessing the prisoner's assignment to a particular confinement facility.

   *People v. Morgan*, 712 P.2d 1004, 1007 (Colo. 1986). We have already held that "a reference in a classification review document to a pending charge did not constitute a detainer with respect to that charge." *Id.* A particular scored custody level can be overridden on a discretionary basis "if such action is warranted to meet the goals established for the classification system." DOC regulation 202–1(15).

3. **16–19–104. Form of demand.** No demand for the extradition of a person charged with

crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under section 16–19–107, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon, or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation, or parole. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of the indictment, information, affidavit, or judgment of conviction or sentence must be authenticated by the executive authority making the demand.

8A C.R.S. (1986).

Corpus Act, sections 13–45–101 to –119, 6 C.R.S. (1973 & 1986 Supp.). The Act specifically defines the circumstances under which relief can be granted.[4] "The intervention by the judiciary into the administration of corrections programs by executive officials is *reserved for most serious violations of fundamental rights*, and an *allegation to that effect is essential* to any claim for habeas corpus relief." *White v. Rickets*, 684 P.2d 239, 241 (Colo.1984) (emphasis added). However, it is also true that "any restriction in excess of legal restraint that *substantially infringes on basic rights* may be remedied through habeas corpus, even if total discharge does not result." *Marshall v. Kort*, 690 P.2d 219, 222 (Colo.1984) (emphasis added).

■ If a petition for a writ of habeas corpus is insufficient on its face, a court is correct in denying it. *King v. Tinsley*, 158 Colo. 99, 100, 405 P.2d 689, 690 (1965). If a petition establishes a prima facie case, the petitioner is then entitled to a hearing. *Osborne v. Van Cleave*, 166 Colo. 398, 443 P.2d 988 (1968). In a habeas corpus proceeding, which is civil, the only parties before the trial court are the petitioner and the person holding the petitioner in custody, and the only question to be resolved is whether the custodian has authority to deprive the petitioner of his liberty. *Stilley v. Tinsley*, 153 Colo. 66, 385 P.2d 677 (1963). Judicial inquiry is limited to a determination of the validity of the petitioner's confinement at the time of the hearing. *White v. Rickets*, 684 P.2d 239, 242 (Colo.

1984); *People v. Pitcher*, 192 Colo. 195, 557 P.2d 395 (1976).

■ We agree with the Attorney General's argument that Reed's complaint is not appropriate for the remedy of habeas corpus. The defendant is not attacking the validity of his Colorado detention. Rather, he seeks review of the propriety of Arizona's detainer, and the resulting change in his DOC classification. In *Russell v. Cooper*, 724 P.2d 1302 (Colo.1986), we addressed "the issue of whether a prisoner serving a sentence in Colorado may *attack the validity of a foreign detainer* lodged against him *through a habeas corpus petition*, even if the foreign state has not yet made a demand for temporary custody." *Id.* at 1303 (emphasis added). In *Russell*, the defendant was incarcerated in Colorado when Oregon lodged a detainer against him, on the basis of untried charges pending against Russell in Oregon. *Id.* at 1302, 1304. The defendant's complaint in *Russell* was the same as the petitioner's complaint here: that the existence of an allegedly invalid detainer "significantly restrict[ed] a prisoner's security classification and rehabilitative opportunities and is therefore a proper subject for habeas corpus relief." *Id.* at 1303.

■ Russell sought dismissal of the Oregon charges through a habeas corpus proceeding. We held that since there had not been a disposition of the Oregon charges, a habeas corpus proceeding in Colorado was not the proper remedy. *Id.* at 1304. We also disagreed with the petitioner's conten-

---

4. **13–45–103. Hearing—pleadings—discharge.**
(2) If it appears that the prisoner is in custody by virtue of process from any court legally constituted, he can be discharged only for some of the following causes:
(a) Where the court has exceeded the limit of its jurisdiction, either as to the matter, place, sum, or person;
(b) Where, though the original imprisonment was lawful, yet by some act, omission, or event which has subsequently taken place, the party has become entitled to his discharge;
(c) Where the process is defective in some substantial form required by law;
(d) Where the process, though in proper form, has been issued in a case or under circumstances where the law does not allow process or orders for imprisonment or arrest to issue;

(e) Where, although in proper form, the process has been issued or executed by a person either unauthorized to issue or execute the same or where the person having the custody of the prisoner under such process is not the person empowered by law to detain him;
(f) Where the process appears to have been obtained by false pretense or bribery;
(g) Where there is no general law, nor any judgment, order, or decree of a court to authorize the process, if in a civil suit, nor any conviction if in a criminal proceeding.
(3) No court on the return of a habeas corpus shall inquire into the legality or justice of a judgment or decree of a court legally constituted, in any other manner....
6 C.R.S. (1973).

tion that restriction of his security classification and rehabilitative opportunities were a proper subject for habeas corpus relief.[5] *Id.* at 1303.

The same analysis applies here. Reed is attempting to attack the validity of the Arizona detainer through a habeas corpus proceeding, even though Arizona has not yet sought Reed's return to Arizona's custody. The facts presented here are not appropriate for a habeas corpus proceeding because the petitioner is not attacking the legality of his Colorado incarceration. Arizona's interest arises from Reed's unserved sentence rather than pending, untried charges, and extradition is based upon "the substantive criminal offense for which the appellant has not yet completed his sentence." *Morgan v. Miller,* 197 Colo. 341, 342, 593 P.2d 357, 358 (1979).

■ As a result, the petitioner's argument that he was denied due process because there was no hearing is without merit. He is entitled to a hearing only if his petition for a writ of habeas corpus meets a prima facie showing that his confinement is invalid.

### B.

■ Reed also contends that the detainer in his file is an active detainer, resulting in a violation of his constitutional rights because of his DOC reclassification. The district court described the detainer as a "flagging device." The defendant asks that we analyze the detainer in his file under the Interstate Agreement on Detainers (hereinafter IAD).[6] However, the IAD does not apply to this case. As stated above, Arizona's interest in Reed arises from his unserved sentence, not pending charges. "The purpose of the Interstate Agreement on Detainers is to encourage the expeditious and orderly *disposition of charges pending* in one state against a person imprisoned in another state." *People v. Quackenbush,* 687 P.2d 448, 450 (Colo.1984) (emphasis added). Reed has had disposition of the charges, and this is not a detainer for purposes of the IAD.

The United States Supreme Court addressed this terminology problem in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). In *Moody,* the defendant was convicted and sentenced in federal court. After serving part of his sentence and while on parole, he killed two people in Massachusetts and was convicted there of manslaughter and second degree murder. Both crimes were parole violations. After

---

**5.** Even if a habeas corpus proceeding was an appropriate remedy, the defendant's complaints do not rise to the level of constitutional right violations. The United States Supreme Court has held that an inmate has no constitutional right to a particular classification in a particular correctional institution, even where the inmate has been transferred to a prison where he was placed "in substantially more burdensome conditions that [sic] he had been experiencing." *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538–39, 49 L.Ed.2d 451 (1976). This is precisely the substance of Reed's reclassification argument.

Meachum claimed that because he was not provided a hearing before his transfer to a more confining institution, he was deprived of his due process rights. The Court held:

> [N]o legal interest or right of these respondents under [state] law would have been violated by their transfer whether or not their misconduct had been proved [at the requested hearing] in accordance with procedures that might be required by the Due Process Clause in other circumstances. Whatever expectation the prisoner may have in remaining at a particular prison ..., it is too ephemeral and

insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him....

*Id.* at 228, 96 S.Ct. at 2540.

The same due process argument was addressed in *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), where the defendant alleged that "the pending warrant and detainer adversely affect his prison classification and qualification for institutional programs." *Id.* at 88 n. 9, 97 S.Ct. at 279 n. 9. The Court responded by applying its holding in *Meachum*: "We have rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right." *Id.* The Court specifically applied the holding in *Meachum* to "prisoner classification and eligibility for rehabilitative programs in the federal system" and held that no due process protections were required, even where "a 'grievous loss'" results to the inmate. *Id.*

**6.** The IAD is found at sections 24–60–501 to –507, 10 C.R.S. (1982). *See also* §§ 16–14–101 to –108, 8A C.R.S. (1986) (Uniform Mandatory Disposition of Detainers Act).

the defendant was incarcerated for the homicides, the United States Board of Parole "issued but did not execute a parole violator warrant; this was lodged with prison officials as a 'detainer.'" *Id.* at 80, 97 S.Ct. at 275.

In footnote 2 of the *Moody* opinion, the Court explained:

A detainer in this context is an *internal administrative mechanism* to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity to act—in this case by taking the inmate into custody or by making a parole revocation determination. When two autonomous jurisdictions are involved, as for example when a federal detainer is placed against an inmate of a state institution, a detainer is a matter of comity.

*Id.* (emphasis added). The Court also held that the "[i]ssuance of the warrant [which was lodged with prison officials as a detainer] and notice of that fact to the institution of confinement did no more than express the [Parole] Board's intent to defer consideration of parole revocation to a later time." *Id.* at 86, 97 S.Ct. at 278.

In this case, the so-called detainer was also "an internal administrative mechanism," used for the purpose of preventing Reed's release from custody until Arizona "has had an opportunity to act." *Id.* at 80 n. 2, 97 S.Ct. at 275 n. 2. This detainer does not trigger the procedural requirements of the IAD because there are not pending charges against the defendant in the foreign state. The agreement on detainers, §§ 24–60–501 to –507, 10 C.R.S. (1973), does not apply where there is no untried indictment, information or complaint outstanding in the receiving state. *Beals v. Wilson,* 631 P.2d 1181, 1183 (Colo. App.1981).

Finally, Reed's reliance on *Norrod v. Bower,* 187 Colo. 421, 532 P.2d 330 (1975), is misplaced. In *Norrod,* the petitioner prisoner filed a petition for habeas corpus in which "he attacked the legality of his confinement." *Id.* at 423, 532 P.2d at 331. Norrod was arrested in Colorado and detained for extradition because he was a fugitive from Kentucky. There was an outstanding warrant for Norrod, because he had been charged in Kentucky with the crime of escape. This court affirmed the district court's denial of the writ of habeas corpus, holding that the extradition documents were sufficient. The facts of the case render *Norrod* inapplicable to the case at bar. Norrod was attacking the validity of his Colorado confinement; he had not been charged or convicted of any crime in Colorado, nor had he been convicted of escape in the receiving state.

We conclude that the district court correctly held that the detainer placed in Reed's file was merely a flagging device for administrative purposes. Even if the petitioner has suffered due to his alleged reclassification,[7] he does not have a constitutional right to a particular security level within DOC. Reed's attempt to obtain a writ of habeas corpus is not appropriate, since he is not attacking his Colorado confinement. For these reasons, we affirm the district court's order of dismissal.

---

7. The record contains a 1985 review of the defendant's custody rating, determining his classification as Medium Security. However, the record does not indicate what security level applied before the reclassification.