**Salvatore ANDRETTI,**
**Petitioner/Appellant,**

**v.**

**H.B. JOHNSON, Respondent/Appellee.**

**No. 88SA420.**

Supreme Court of Colorado,
En Banc.

Sept. 18, 1989.

Salvatore Andretti, Canon City, pro se.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Robert C. Ripple, Asst. Atty. Gen., Denver, for respondent/appellee.

Justice VOLLACK delivered the Opinion of the Court.

Petitioner Salvatore Andretti (petitioner) appeals the Fremont County District Court's denial of his Application for a Writ of Habeas Corpus. The district court held that the application failed to state a claim for relief as a matter of law and fact. We affirm the district court's order.

## I.

On April 15, 1985, the El Paso County District Court sentenced petitioner to the custody of the Executive Director of the Department of Corrections (DOC) for a total of thirty-two years on two counts of aggravated robbery. On December 12, 1986, petitioner was scored on a custody designation report used by DOC in placement of prisoners. Petitioner's total score was sixteen points. Seven of those points resulted from petitioner's involvement in an incident of institutional violence involving the use of a weapon or resulting in serious injury or death on April 15, 1985, in the El Paso County Jail. Based on the sixteen-point score, petitioner's custody designation was maximum-level. Petitioner filed an Application for a Writ of Habeas Corpus on October 24, 1988, contending that the seven-point item on the DOC report was the result of "derogatory and inaccurate" information and adversely affected his "placement, custody and parole classification."[1] The district court denied petitioner's application on the ground that as a matter of law and fact it failed to state a claim for relief. Petitioner appeals the district court's denial of his Application for a Writ of Habeas Corpus, and contends that the report's recommendation of maximum-level custody represents a denial of due process.

## II.

Subsections 13–45–103(2) and (3), 6A C.R.S. (1987), specify the limited circumstances under which we may grant habeas corpus relief.[2] In *Reed v. People*, 745 P.2d 235, 238 (Colo.1987), we noted the limited nature of habeas corpus relief by stating that

[i]n a habeas corpus proceeding, which is civil, the only parties before the trial court are the petitioner and the person holding the petitioner in custody, and the only question to be resolved is whether the custodian has authority to deprive the petitioner of his liberty. Judicial inquiry is limited to a determination of the validity of the petitioner's confinement at the time of the hearing.

(Citations omitted). Although under section 13–45–103(2)(b), 6A C.R.S. (1987), proper issuance of a writ of habeas corpus is triggered by conditions entitling a petitioner to discharge, we noted in *Marshall v. Kort*, 690 P.2d 219, 222 (Colo.1984), that "any restriction in excess of legal restraint that substantially infringes on basic rights may be remedied through habeas corpus, even if total discharge does not result." If a petition for habeas corpus is insufficient on its face, a court is correct to deny it. *Reed*, 745 P.2d at 238 (citing *King v. Tinsley*, 158 Colo. 99, 100, 405 P.2d 689, 690 (1965)). We hold that the district court correctly dismissed petitioner's request for habeas corpus relief.

The facts upon which petitioner's application is based fail to state a claim for relief

---

1. Petitioner's application named H.B. Johnson, Superintendent of the Centennial Correctional Facility, as the respondent.

2. Those subsections provide:
   (2) If it appears that the prisoner is in custody by virtue of process from any court legally constituted, he can be discharged only for some of the following causes:
   (a) Where the court has exceeded the limit of its jurisdiction, either as to the matter, place, sum, or person; .
   (b) Where, though the original imprisonment was lawful, yet by some act, omission, or event which has subsequently taken place, the party has become entitled to his discharge;
   (c) Where the process is defective in some substantial form required by law;
   (d) Where the process, though in proper form, has been issued in a case or under circumstances where the law does not allow process or orders for imprisonment or arrest to issue;
   (e) Where, although in proper form, the process has been issued or executed by a person either unauthorized to issue or execute the same or where the person having the custody of the prisoner under such process is not the person empowered by law to detain him;
   (f) Where the process appears to have been obtained by false pretense or bribery;
   (g) Where there is no general law, nor any judgment, order, or decree of a court to authorize the process, if in a civil suit, nor any conviction if in a criminal proceeding.
   (3) No court on the return of a habeas corpus shall inquire into the legality or justice of a judgment or decree of a court legally constituted, in any other manner.

as a matter of law. Petitioner first claims that his maximum-custody classification is based on an inaccuracy in the DOC report and therefore his confinement at the level of maximum custody violates his right to due process. We have been reluctant to issue writs of habeas corpus which would interfere with the administration of corrections programs. As we explained in *White v. Rickets*, 684 P.2d 239, 241 (Colo.1984), "[t]he intervention by the judiciary into the administration of corrections programs by executive officials is reserved for [the] most serious violations of fundamental rights, and an allegation to that effect is essential to any claim for habeas corpus relief."

■ It is well established that prisoners do not have a constitutional right to a particular classification level within a correctional system. *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (administrative segregation did not violate due process); *Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976) (no violation of due process where prison officials transferred inmate to maximum security prison). Prisoners do have such a right, however, when state law creates such an interest, *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (Constitution does not guarantee good-time credit, but where Nebraska provided statutory right to good-time credit prisoner was entitled to minimum procedural protections from arbitrary state action), or the prisoner retains some liberty interest which the state's action impermissibly invades. *Vitek v. Jones*, 445 U.S. 480, 487–88, 100 S.Ct. 1254, 1260–61, 63 L.Ed.2d 552 (1980) (involuntary transfer of state prisoner to mental hospital implicates a liberty interest protected by the due process clause). Colorado law does not create an expectation of liberty in any particular DOC security-level classification, *Reed*, 745 P.2d at 240, and the DOC's classification of petitioner did not impermissibly invade any retained liberty interest. *Cf. Vitek*, 445 U.S. at 491, 100 S.Ct. at 1263.

■ Petitioner's second claim is that the allegedly inaccurate information in his presentence report adversely affects his parole eligibility. In *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 12, 99 S.Ct. 2100, 2104, 2106, 60 L.Ed.2d 668 (1979), the United States Supreme Court held that although "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," Nebraska's parole statute created an expectation of release which entitled prisoners to some measure of constitutional protection. Courts have determined on a case-by-case basis whether state statutes create such constitutionally protected expectations. *See Board of Pardons v. Allen*, 482 U.S. 369, 378 n. 10, 107 S.Ct. 2415, 2421 n. 10, 96 L.Ed.2d 303 (1987). Section 17–2–201(4)(a), 8A C.R.S. (1986), states that

> [t]he [parole] board may parole any person who is sentenced or committed to a correctional facility when such person has served his minimum sentence, less time allowed for good behavior, and there is a strong and reasonable probability that the person will not thereafter violate the law and that his release from institutional custody is compatible with the welfare of society.

Section 17–2–204(1), 8A C.R.S. (1986), specifies that

> [t]he [parole] board, pursuant to rules and regulations, may issue a parole or permit to go at large to any inmate who now is imprisoned in a correctional facility and who may have served the minimum term pronounced by the court or, in the absence of such minimum term pronounced by the court, the minimum term provided by law for the crime for which he was convicted.

These sections do not create an expectation of release before the expiration of a valid sentence so as to entitle prisoners to constitutional protections. *Schuemann v. Colorado State Bd. of Adult Parole*, 624 F.2d 172, 174 n. 2 (10th Cir.1980); *Thompson v. Riveland*, 714 P.2d 1338, 1340 (Colo.App. 1986).

Petitioner's application, read in the most favorable light, fails to establish a violation of his fundamental rights. Petitioner's maximum-level custody classification, and any effect the DOC report may have on his parole eligibility, do not impair his fundamental rights. Therefore, as a matter of law petitioner is not entitled to a writ of habeas corpus.

The order of the district court is affirmed.