**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**James ALEXANDER, Defendant–Appellant.**

**No. 89SA130.**

Supreme Court of Colorado,
En Banc.

June 11, 1990.

As Modified on Denial of Rehearing
July 9, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert J. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Jeffrey K. Holmes, Denver, for defendant-appellant.

Justice VOLLACK delivered the Opinion of the Court.

In this appeal Defendant James Alexander attacks the constitutionality of his sentence under the Habitual Criminal Act on equal protection grounds. The defendant also argues that the district court erred in denying his motion to suppress, that his two prior convictions underlying the habitual criminal charge were unconstitutionally obtained, and that the district court erred in refusing to give his proffered special instruction on the issue of identification. We affirm.

## I.

In 1985 the defendant was convicted of second degree kidnapping[1] and first degree sexual assault.[2] The defendant was also convicted of violating subsection 16–13–101(1) of the Habitual Criminal Act, §§ 16–13–101 to 16–13–103, 8A C.R.S. (1986). The trial court sentenced the defendant to a term of imprisonment of 50 years plus parole. *See* § 16–13–101(1).

## A.

Prior to trial the defendant filed a motion to suppress all physical evidence and statements obtained from him on the ground that they were the product of an unlawful arrest. The hearing on the motion to suppress established that over a period of three days police officers in Centreville, Illinois, received phone calls from an anonymous woman who said that James Alexander was wanted by the police and was staying on Mitchell Street in Centreville. The informant provided the officers with James Alexander's date of birth. Captain Sylvester McWherter of the Centreville Police Department checked with the Denver Police Department and verified that a warrant had been issued in Colorado for the arrest of James Alexander.[3] The notice received by the Centreville police of the arrest warrant outstanding in Colorado listed two dates of birth for James Alexander: October 2, 1956, and October 2, 1955.

On the evening of October 18, 1984, Captain McWherter saw the defendant driving a car on a Centreville street. Captain McWherter and three other officers stopped the defendant's car and ordered him out of the car. Before he got out of the car the defendant stated that he would not be taken alive. The officers again ordered the defendant out of the car. The defendant then got out of the car, and Captain McWherter handcuffed him and read him his *Miranda*[4] rights. In response to Captain McWherter's *Miranda* advisement the defendant said, "Well, what have I did? I only been here two months from Denver." At the station Captain McWherter again advised the defendant of his *Miranda* rights. The defendant refused to sign a *Miranda* advisement form.

The defendant argued at the suppression hearing that the police lacked probable cause to arrest him. The district court denied the motion to suppress.

## B.

The defendant's case was tried to a jury. The defendant tendered a jury instruction which cautioned jurors to carefully evaluate the identification testimony of the trial witnesses. The instruction reminded the jury that the prosecution has the burden of proving identity beyond a reasonable doubt, and stated that the value of eyewitness identification testimony depends on "the opportunity the witness has to observe the offender at the time of the offense and to make a reliable identification later." The instruction also cautioned the jurors to consider the capacity and opportunity of each identification witness to reliably observe the offender, the reliability of subsequent identifications, any subsequent failures by witnesses to identify the defendant, and the credibility and veracity of each identification witness. The district court declined to give the defendant's proffered instruction to the jury.

## II.

The defendant contends that the Centreville police did not possess probable cause to arrest him, and that therefore the district court erred in denying his motion to suppress. We disagree.

 "Probable cause to arrest exists when the objective facts and circumstances available to a reasonably cautious officer

---

1. § 18–3–302, 8B C.R.S. (1986). Section 18–3–302 has since been amended. *See* § 18–3–302, 8B C.R.S. (1989 Supp.).

2. § 18–3–402, 8B C.R.S. (1986).

3. Captain McWherter testified that after the informant provided James Alexander's date of birth, the police "ran a check with the Denver police, and it came back wanted."

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1968).

warrant the belief that an offense has been or is being committed by the person arrested." *People v. Freeman,* 668 P.2d 1371, 1377 (Colo.1983). " 'An officer who does not personally possess sufficient information to constitute probable cause may nevertheless make a valid arrest if he acts upon the direction, or as a result of a communication from, a fellow officer, and the police, as a whole, possess sufficient information to constitute probable cause.' " *People v. Fields,* 785 P.2d 611, 613 (Colo. 1990) (quoting *Freeman,* 668 P.2d at 1377) (brackets omitted). *See also Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

■ Captain McWherter acted upon the direction of, and as a result of a communication from, a fellow officer. Captain McWherter arrested the defendant on the basis of a reliable report that a warrant for the defendant's arrest was outstanding in Colorado. The arrest was not invalidated by the fact that the printed notice received by the Centreville police listed two dates of birth for the defendant. The notice sufficiently identified the defendant, and Captain McWherter testified that he confirmed the existence of the warrant with the Denver police. The defendant does not dispute the second requirement of the fellow officer rule, that the police as a whole possessed sufficient information to constitute probable cause. *Id.; People v. Baca,* 198 Colo. 399, 402, 600 P.2d 770, 771–72 (1979).[5]

### III.

The defendant asserts that his sentence under the Habitual Criminal Act violates equal protection of the laws. We disagree.

■ The defendant's argument is based on the operation of the Habitual Criminal

Act. Section 16–13–101 provides for enhanced punishment for two classes of criminal defendants. Subsection 16–13–101(1) provides that convicted felons who have been convicted of two felonies within 10 years of the commission of their third felony "shall be punished by confinement in a correctional facility for a term of not less than twenty-five nor more than fifty years." Subsection 16–13–101(2) provides that a convicted felon who has previously been convicted of three felonies "shall be punished by imprisonment in a correctional facility for the term of his or her natural life." Under Colorado's parole statutes a criminal defendant sentenced for crimes committed on or after July 1, 1979, but before July 1, 1985, to 50 years in prison will serve approximately 23 years of his or her sentence before becoming entitled to parole.[6] *See* §§ 17–22.5–301 and 17–22.5–302, 8A C.R.S. (1986 & 1989 Supp.); *Thiret v. Kautzky,* 792 P.2d 801 (Colo.1990). In contrast, a defendant sentenced to life imprisonment under subsection 16–13–101(2) becomes eligible for parole after he or she has served twenty years. § 17–22.5–104(2)(b), 8A C.R.S. (1986). The defendant argues that this statutory sentencing scheme violates equal protection because persons sentenced to life in prison under subsection 16–13–101(2) become eligible for parole after serving twenty years, whereas the defendant will be eligible for parole after serving approximately 25 years of his sentence. *See* §§ 17–22.5–301 and 17–22.5–302.[7] The defendant's equal protection claim rests on the fact that inmates sentenced to life imprisonment under subsection 16–13–101(2) may receive parole after serving less time than the defendant will have served before he becomes eligible

---

**5.** The defendant's arrest was also valid under Illinois law. In Illinois a police officer may arrest a person when the officer has reasonable grounds to believe that a warrant for the person's arrest has been issued in another jurisdiction. Ill.Rev.Stat., ch. 38, para. 107–2(b) (1979); *People v. Wolgemuth,* 69 Ill.2d 154, 160–61, 13 Ill.Dec. 40, 43, 370 N.E.2d 1067, 1070 (1977), *cert. denied,* 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 408 (1978).

**6.** The actual time a particular defendant serves will be affected by the credit he or she is given for pre-sentence confinement. § 17–22.5–102, 8A C.R.S. (1986).

**7.** The People calculate that the defendant will become eligible for parole after serving 21½ years of his sentence. The defendant calculates that he will be entitled to parole after he serves 25 years of his sentence.

for parole under subsection 16–13–101(1).[8]

■■■ "Equal protection of the laws is guaranteed by the fourteenth amendment of the United States Constitution and by the due process clause in article II, section 25, of the Colorado Constitution." *People v. Rickstrew*, 775 P.2d 570, 574 (Colo.1989). "Equal protection of the laws assures that those who are similarly situated will be afforded similar treatment." *People v. Jefferson*, 748 P.2d 1223, 1225 (Colo.1988); *People v. Mozee*, 723 P.2d 117, 126 (Colo. 1986). In the absence of a statutory infringement on a fundamental right or the creation of a suspect classification, equal protection of the laws is satisfied if the statutory classification has a reasonable basis in fact and bears a reasonable relationship to a legitimate government interest. *Firelock Inc. v. District Court*, 776 P.2d 1090, 1098 (Colo.1989); *Persichini v. Brad Ragan, Inc.*, 735 P.2d 168, 174 (Colo. 1987); *Lee v. Colorado Dep't of Health*, 718 P.2d 221, 227 (Colo.1986). The party challenging the statutory classification bears the burden of proving beyond a reasonable doubt that the classification is unreasonable, or, if reasonable, is unrelated to any legitimate governmental objective. *Firelock*, 776 P.2d at 1097; *Persichini*, 735 P.2d at 174–75; *Lee*, 718 P.2d at 227; *High Gear and Toke Shop v. Beacom*, 689 P.2d 624, 630 (Colo.1984).

The petitioner's equal protection claim merits a rational basis standard of review. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979); *Andretti v. Johnson*, 779 P.2d 382, 384 (Colo.1989). Thus the classification which the defendant challenges does not invade a fundamental right, or create a suspect or quasi-suspect class. *Id.; see also United States v. Solomon*, 848 F.2d 156, 157 (11th Cir.1988) (statutes prescribing different minimum

sentences for possession of drugs of different purity did not discriminate on the basis of a suspect classification or the exercise of a fundamental right).

The defendant argues that his sentence violates equal protection because the parole board may, in its discretion, release a prisoner serving a life sentence after that prisoner has served less time than the defendant will have served before he may be considered for parole. The defendant's argument is without merit because the statutory scheme which gives the parole board discretionary power to grant parole on the basis of factors other than the length of a prisoner's sentence is reasonably related to a legitimate government interest. *See Johnson*, 779 P.2d at 384; *Ferchaw v. Tinsley*, 234 F.Supp. 922 (D.Colo.1964); §§ 17–2–201(4)(a) & 17–2–204(1).

## IV.

The defendant challenges the validity of his two previous convictions underlying the habitual criminal count of the information. The defendant challenges the constitutionality of the advisement he received prior to pleading guilty on April 16, 1975, to second degree burglary. The defendant also attacks his 1982 conviction for first degree aggravated motor vehicle theft and second degree kidnapping on the ground that the trial court conducted part of the voir dire outside of his presence, in violation of his sixth amendment right to be present at trial and confront adverse witnesses. We reject the defendant's challenges to the validity of his prior convictions.

### A.

■■■ "A prior conviction obtained in a constitutionally invalid manner cannot be used against an accused in a subsequent criminal proceeding to support guilt or to increase punishment." *Lacy v. People*, 775 P.2d 1, 4 (Colo.), *cert. denied*, —— U.S. ——, 110 S.Ct. 350, 107 L.Ed.2d 337 (1989). Due process of law requires that a defendant's plea of guilty be knowing and volun-

---

**8.** The defendant will not become *entitled* to parole at the expiration of his sentence less good time and earned time credits, because he was sentenced pursuant to § 16–13–101. *See* § 17–2–201(5)(a), 8A C.R.S. (1986); § 17–2–213, 8A C.R.S. (1986); *Thiret*, 792 P.2d at 806.

tary. *Henderson v. Morgan*, 426 U.S. 637, 644–45, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976); *People v. Drake*, 785 P.2d 1257, 1268 (Colo.1990); *Harshfield v. People*, 697 P.2d 391, 393 (Colo.1985). We noted in *Lacy v. People*, 775 P.2d at 4, that "[a] guilty plea may be involuntary in the constitutional sense for one of two reasons." A guilty plea may be involuntary because the defendant does not understand the nature of the constitutional protections he is waiving, or because the defendant "has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson*, 426 U.S. at 645 n. 13, 96 S.Ct. at 2257 n. 13; *accord Lacy*, 775 P.2d at 4. "In the latter case, a plea is not voluntary unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' " *Id.* (quoting *Henderson*, 426 U.S. at 645 n. 13, 96 S.Ct. at 2257 n. 13).

■ "To establish that the constitutional requirement of voluntariness has been satisfied, the record as a whole must affirmatively demonstrate that the defendant understood the constitutional rights he was waiving and the critical elements of the crime to which the plea was tendered." *Lacy*, 775 P.2d at 4. "A reviewing court cannot presume from the mere fact that a guilty plea was entered that the defendant waived his constitutional rights and understood the critical elements of the crime with which he was charged." *Id.* at 4–5.

■ "A defendant attacking the constitutionality of a prior conviction in habitual criminal proceedings must make a prima facie showing that the guilty plea was unconstitutionally obtained." *Drake*, 785 P.2d at 1269; *accord Lacy*, 775 P.2d at 6. "A prima facie showing means evidence that, when considered in a light most favorable to the defendant, will permit the court to conclude that the conviction failed to meet relevant constitutional standards." *Id.* "Once a prima facie showing is made, the conviction is not admissible unless the

prosecution establishes by a preponderance of the evidence that the conviction was obtained in accordance with the defendant's constitutional rights." *Lacy*, 775 P.2d at 6–7.

### B.

#### 1.

■ The defendant argues that his 1975 plea of guilty to the charge of second degree burglary was unconstitutionally obtained because the trial court failed to advise him that his silence at trial could not be used against him, and that no adverse inference could be drawn from his failure to testify. The defendant also complains that the trial court failed to advise him of his right to testify, his right to a trial to the court, and his right to a speedy and public trial. The defendant also contends that his 1975 conviction was unconstitutionally obtained because the trial court improperly advised him of the sentence he could receive. We hold that the trial court's failure to inform the defendant of these particular rights did not render the defendant's guilty plea invalid.

■ We have previously held that a trial court need not recite a formalistic litany in order to ensure that the defendant understand the nature of the constitutional protections he is waiving. *Drake*, 785 P.2d at 1272; *Lacy*, 775 P.2d at 5. "Rather, the record as a whole must simply show that the defendant entered his guilty plea voluntarily and understandingly." *Lacy*, 775 P.2d at 5. For example, a trial court's failure to refer to the privilege against compulsory self-incrimination, or the right to a trial by jury, or the right to confront one's accusers, does not invalidate a subsequent guilty plea on constitutional grounds. *People v. Wade*, 708 P.2d 1366, 1369 (Colo. 1985); *People v. Marsh*, 183 Colo. 258, 262, 516 P.2d 431, 433 (1973).[9] As we stated in *People v. Drake*, 785 P.2d at 1272, "[d]ue process of law does not require that a court inform a defendant of every conceivable

---

**9.** In *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), the

Supreme Court highlighted these rights which a defendant waives by pleading guilty.

constitutional right that might be waived by a guilty ... plea."

The record of the 1975 providency hearing reveals that the defendant was represented by counsel. *See Drake,* 785 P.2d at 1268; *Lacy,* 775 P.2d at 6 n. 8. The trial court advised the defendant that he had "a right to have a jury of twelve decide whether [he was] innocent or guilty," and that he was innocent until proven guilty beyond a reasonable doubt. The trial court advised the defendant of his right to counsel, his right to remain silent, his right to refrain from testifying, and his right to subpoena witnesses. This advisement was sufficient to apprise the defendant of the constitutional rights he was waiving by pleading guilty. *Drake,* 785 P.2d at 1272 (upholding validity of defendant's guilty plea despite trial court's failure to advise defendant of his power to subpoena out-of-state witnesses); *Wade,* 708 P.2d at 1370 (upholding validity of defendant's guilty plea despite trial court's failure to advise defendant that prosecution must prove his guilt beyond a reasonable doubt); *Marsh,* 183 Colo. at 261, 516 P.2d at 432 (upholding validity of defendant's guilty plea despite trial court's failure to advise defendant that he was waiving his right to confront his accusers and his right to remain silent).

### 2.

■ We also reject the defendant's argument that his 1975 conviction was unconstitutionally obtained because the trial court improperly advised him of the sentence he could receive.

The defendant pleaded guilty in 1975 to second degree burglary, which was a class four felony. A defendant cannot effectively waive his constitutional rights unless he has full knowledge of the consequences of his guilty plea. *Boykin,* 395 U.S. at 244 n. 7, 89 S.Ct. at 1713 n. 7; *Wade,* 708 P.2d at 1368. At the time the defendant was sentenced for his 1975 conviction, Colorado employed an indeterminate sentencing scheme for class four and class five felonies. The applicable prison sentence for a class four felony was indeterminate to a maximum of ten years. § 18–1–105, 8

C.R.S. (1978). In cases involving class four or class five felonies, subsection 16–11–304(2)(a) required trial courts to impose a maximum sentence of at least one-third of the statutorily prescribed maximum sentence. Therefore, under subsection 16–11–304(2)(a) the trial court was required to sentence the defendant to a maximum penalty of not less than three and one-third years. The defendant maintains that his guilty plea was rendered involuntary by the trial court's failure to advise him that the maximum length of his sentence would be not less than three and one-third years.

The trial court advised the defendant that, as a class four felony, second degree burglary carried a possible penalty of from indeterminate as a minimum to ten years as a maximum. The trial court advised the defendant: "Now you understand it is up to the Parole Board as to when you would get out, if you were sentenced, and the long end could be ten years." The trial court's failure to advise the defendant that the maximum length of his sentence would be not less than three and one-third years did not render the defendant's guilty plea involuntary. The record indicates that the defendant was aware of the minimum and maximum penalty he would face were he to plead guilty to second degree burglary. *Cf. People v. Adrian,* 701 P.2d 45, 48 (Colo. 1985); *but cf. People v. Chippewa,* 713 P.2d 1311, 1314 (Colo.App.1985) (defendant's plea unconstitutionally obtained where he is advised that presumptive penalty range is 8 to 12 years when presumptive range is in fact 12 to 24 years), *aff'd on other grounds,* 751 P.2d 607 (Colo. 1988).

### 3.

The defendant also argues that his 1975 conviction for second degree burglary was unconstitutionally obtained because the trial court did not adequately define the term "knowingly" in the definition of second degree burglary. We disagree.

■ A defendant understands the nature of the charges against him if the record affirmatively demonstrates the defendant's understanding of the critical ele-

ments of the crime to which the plea is tendered. *Drake,* 785 P.2d at 1268; *Lacy,* 775 P.2d at 5; *Harshfield,* 697 P.2d at 393. In order to satisfy this requirement the court should explain the critical elements "in terms which are understandable to the defendant." *Lacy,* 775 P.2d at 5. The degree of explanation required depends on the nature and complexity of the crime, the peculiar facts of each situation, and the personal characteristics of the defendant. *Drake,* 785 P.2d at 1268 (citing *United States v. Kamer,* 781 F.2d 1380, 1384 (9th Cir.), *cert. denied,* 479 U.S. 819, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986)); *Lacy,* 775 P.2d at 6. Regardless of the complexity of the crime, the record must demonstrate that the defendant understood any mental state element of the crime to which he pleaded guilty. *Lacy,* 775 P.2d at 6; *Harshfield,* 697 P.2d at 394–95.

■ In advising the defendant of the elements of second degree burglary, the trial court stated: "Now it says 'knowingly.' 'Knowingly' means you knew what you were doing when you—when this took place." The trial court asked the defendant if he understood what that meant and the defendant replied, "Yes." Later the court stated, "Do you understand the charge here? It's second degree burglary—breaking into somebody's apartment with the idea you're going to steal property while you were in there. Does that come through clear?" The defendant responded, "Yes."

The record demonstrates that the defendant understood the meaning of the word "knowingly" when he pleaded guilty to second degree burglary. The defendant was nineteen years old and had completed the tenth grade. He was represented by counsel. *Cf. Marshall v. Lonberger,* 459 U.S. 422, 436–38, 103 S.Ct. 843, 851–53, 74 L.Ed.2d 646 (1983); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); *Lacy,* 775 P.2d at 6 n. 8. He professed an understanding of the term "knowingly." *Drake,* 785 P.2d at 1269. Furthermore, the mental state element of the crime of second degree burgla-

ry is not complex. *Compare Harshfield,* 697 P.2d at 394. In *Lacy,* 775 P.2d at 6, we cited cases from this court identifying conspiracy to commit burglary, breaking and entering a motor vehicle with intent to commit the crime of larceny, conspiracy to commit escape, and assault to rob as crimes of greater definitional complexity. The only mental state element of second degree burglary, however, is that the defendant "knowingly" break an entrance into, or enter, or remain unlawfully in, a building or occupied structure with intent to commit therein a crime against a person or property. § 18–4–203, 8B C.R.S. (1986). Given the relatively plain meaning of the "knowingly" element of second degree burglary, the record of the trial court's 1975 advisement establishes that the defendant understood the critical elements of the charge to which he pleaded guilty.

### C.

■ The defendant challenges the validity of his 1982 conviction for first degree aggravated motor vehicle theft and second degree kidnapping. The defendant argues that his conviction was unconstitutionally obtained because the court discussed some matters at the bench, out of the defendant's presence, with 9 or 10 prospective jurors. We reject the defendant's argument.

The entire voir dire of the prospective jurors in question did not take place at the bench. Rather, the prospective jurors in question approached the bench to discuss difficulties they would have sitting on a jury in a sexual assault case.[10] Each interview took less than one minute. The trial judge, the prosecuting attorney, and defense counsel were present at the bench during the interviews. Only one of the prospective jurors questioned out of the defendant's presence was selected as a member of the jury. The court only asked one question of that prospective juror. The court asked that question in response to the prospective juror's statements in open court that he had served as a juror

10. Count one of the information charged the

defendant with first degree sexual assault.

once before in a rape case, and that he had mixed feelings about participating in the case. At the bench the court asked the juror if his past experience was "too inflammatory" to make him a fair juror in the defendant's trial. The juror said he did not know. The court directed the juror back to his seat and asked all other questions of the juror in open court.

 "The purpose of voir dire examination is to enable counsel to determine whether any prospective jurors are possessed of beliefs which would cause them to be biased in such a manner as to prevent the counsel's client from obtaining a fair and impartial trial." *People v. Collins,* 730 P.2d 293, 300 (Colo.1986). "The propriety of questions to potential jurors on voir dire is within the discretion of the trial court, and its ruling thereon will not be disturbed on appeal unless an abuse of that discretion is shown." *Id.* The conduct and scope of voir dire are also matters within the trial court's sound discretion. *Edwards v. People,* 160 Colo. 395, 402, 418 P.2d 174, 177 (1966); *King v. People,* 87 Colo. 11, 21, 285 P. 157, 162 (1930). The record plainly reveals that the trial court did not abuse its discretion in conducting the voir dire in the defendant's 1982 trial. Any abuse of discretion which did occur could not possibly have affected the outcome of the trial. *See People v. Jensen,* 747 P.2d 1247, 1250 (Colo.1988).

### V.

 Finally, the defendant contends that the district court committed reversible error by failing to give his proffered eyewitness identification instruction. We disagree.

It is not error for the trial court to refuse a specific instruction on the credibility of eyewitnesses where the trial court gives a general instruction on the credibility of witnesses. *People v. Vigil,* 718 P.2d 496, 503 (Colo.1986); *People v. Thatcher,* 638 P.2d 760, 772 (Colo.1981). The district court did not commit reversible error by declining to give the defendant's proffered instruction on the reliability of eyewitness identifications. The district court gave a general credibility instruction which cautioned the jury to consider the "means of knowledge, ability to observe, and strength of memory" of each witness. The instruction also cautioned the jury to consider "all facts and circumstances shown by the evidence which affects the credibility of the witness' testimony." This instruction sufficiently cautioned the jury to carefully consider the victim's eyewitness identification testimony. *Vigil,* 718 P.2d at 503; *Thatcher,* 638 P.2d at 772.

The defendant's conviction is affirmed.