The Supreme Court of the State of Colorado 
2 East 14th Avenue • Denver, Colorado 80203

2016 CO 14

Supreme Court Case No. 12SC585 
Certiorari to the Colorado Court of Appeals 
Court of Appeals Case No. 09CA1747

Petitioner: 
Charles Dean,
v.
Respondent: 
The People of the State of Colorado.

Judgment Affirmed 
en banc 
February 29, 2016

Attorney for Petitioner:
Alison Ruttenberg, Alternate Defense Counsel

Boulder, Colorado

Attorneys for Respondent:
Cynthia H. Coffman, Attorney General
Ryan A. Crane, Assistant Attorney General

Denver, Colorado

JUSTICE MÁRQUEZ delivered the Opinion of the Court.
¶1       A jury convicted Charles E. Dean of second degree murder, a class 2 felony that carries a maximum presumptive range sentence of twenty-four years. The trial court adjudicated him an habitual criminal based on five previous felony convictions and sentenced him under subsection (2) of the habitual criminal statute, § 18-1.3-801(2), C.R.S. (2015). That provision required the trial court to sentence Dean to four times the maximum presumptive sentence for second degree murder, or ninety-six years. Id.  Under the corresponding parole eligibility provision governing his conviction, Dean must serve seventy-five percent of his sentence, or seventy-two years, before he is eligible for parole. § 17-22.5-403(2.5)(a), C.R.S. (2015).
¶2       Dean contends that the interplay of the habitual criminal statute (section 18-1.3-801) and the parole eligibility statute (section 17-22.5-403), as applied in his case, violates his right to equal protection because he must serve a longer period of incarceration before he is eligible for parole than an habitual offender with a history of more serious felony convictions. Specifically, had his prior criminal history included two or more convictions for violent or more serious felonies, he would have been sentenced instead to life imprisonment under subsection (1) of the habitual criminal statute, but he would have been parole eligible after only forty calendar years. See §§ 18-1.3-801(1)(a), (c); see also 17-22.5-104(2)(d)(III), C.R.S. (2015). Dean argues that his lengthier parole eligibility period violates equal protection because it punishes him more harshly for his less serious prior offenses. The court of appeals rejected Dean’s as-applied equal protection challenge and affirmed his sentence. People v. Dean, 2012 COA 106, ¶¶ 30–32, 292 P.3d 1066, 1073.
¶3       We granted Dean’s petition for a writ of certiorari1 and now affirm the court of appeals. We hold that the sentencing and parole eligibility scheme for habitual criminal offenders does not violate Dean’s constitutional right to equal protection.
I. Facts and Procedural History
¶4       In October 2004, Dean severely beat his friend, Timothy Ware, and left him in a closet to die. Dean later dismembered Ware’s body with a chainsaw in the bathtub. He placed the body parts into trash bags and deposited them in various dumpsters around Denver, then set fire to Ware’s apartment in an attempt to hide the remaining evidence. Dean was charged with first degree murder and several habitual criminal counts. A jury convicted him of the lesser included offense of second degree murder, a class 2 felony.
¶5       The trial court adjudicated Dean an habitual criminal based on five prior felony convictions: first degree burglary (class 3 felony); attempted theft (class 5 felony); attempted first degree trespass (class 6 felony); second degree assault (class 6 felony); and second degree burglary (class 4 felony). The trial court sentenced Dean under subsection (2) of the habitual criminal statute, which governs habitual offenders who have three or more prior felony convictions that do not qualify for a sentence to life imprisonment under subsection (1). § 18-1.3-801(2); see also id. § -801(4) (requiring persons who meet the criteria for subsection (1) to be sentenced to life imprisonment under that subsection). Subsection (2) of the habitual criminal statute required the trial court to sentence Dean to four times the maximum presumptive range sentence for the class 2 felony triggering offense of second degree murder, or ninety-six years. § 18-1.3-801(2)(a)(I)(A); see also § 18-1.3-401(1)(a)(V)(A) (providing a presumptive sentencing range of eight to twenty-four years for class 2 felonies). Under the parole eligibility statute, an offender such as Dean is eligible for parole after serving seventy-five percent of his sentence—in Dean’s case, seventy-two years. § 17-22.5-403(2.5)(a). By contrast, subsection (1) of the habitual criminal statute requires a life sentence for an individual who is convicted of a class 1 or 2 felony or level 1 drug felony, or a class 3 felony that is a crime of violence, and who has been twice convicted previously for any of these offenses. § 18-1.3-801(1)(a). A subsection (1) offender who is sentenced to life imprisonment is eligible for parole after serving at least forty calendar years. § 18-1.3-801(1)(c).
¶6       Dean argued below that his habitual criminal sentence and corresponding parole eligibility deny him equal protection of the laws because, despite his less serious, nonviolent criminal history, Dean must serve a longer period of incarceration before becoming eligible for parole than an habitual criminal sentenced to life imprisonment for a history of serious or violent felonies.
¶7       The trial court rejected Dean’s equal protection challenge, and the court of appeals affirmed Dean’s conviction and sentence. Dean, ¶ 56, 292 P.3d at 1077. The court of appeals concluded that the habitual criminal and parole eligibility statutes, as applied to Dean, did not violate equal protection. Id. at ¶¶ 10, 30, 292 P.3d at 1069, 1073. It reasoned that the legislature rationally distinguished habitual criminals who had committed more serious felonies from those who had committed lesser felonies, and assigned correspondingly severe sentences under the habitual criminal statute. Id.  at ¶ 31, 292 P.3d at 1073. It further reasoned that, for defendants sentenced to life imprisonment, the legislature rationally set parole eligibility at forty years because it is not possible to establish parole eligibility as a percentage of a life sentence given that the duration of a life sentence depends on how long an inmate lives. Id. at ¶ 32, 292 P.3d at 1073. We granted Dean’s petition for a writ of certiorari to review the court of appeals’ determination that Dean’s sentence does not violate equal protection.
II. Standard of Review
¶8       The constitutionality of a statute is a question of law subject to de novo review. Coffman v. Williamson, 2015 CO 35, ¶ 13, 348 P.3d 929, 934; see also People v. Lovato, 2014 COA 113, ¶ 12, 357 P.3d 212, 219 (“We review the constitutionality of a statute, both facially and as applied, de novo.”). A statute is presumed to be constitutional; the challenging party bears the burden of proving its unconstitutionality beyond a reasonable doubt. Hinojos-Mendoza v. People, 169 P.3d 662, 668 (Colo. 2007); People v.  Black, 915 P.2d 1257, 1261 (Colo. 1996).
III. Analysis
¶9       Dean contends that the habitual criminal sentencing and parole eligibility scheme violates his right to equal protection of the laws because, as applied in his case, a nonviolent habitual offender such as Dean must serve a lengthier period of incarceration before becoming eligible for parole than an habitual offender with a history of more serious or violent felony convictions. We disagree.
¶10       We hold that Dean’s contention fails to establish a violation of his right to equal protection. The habitual criminal sentencing and parole eligibility scheme is rationally related to the legislative purposes of public safety and punishment of recidivist offenders; moreover, for purposes of an equal protection claim, this court compares the relative severity of sentences by reference to the maximum possible period of incarceration, not the timing of parole eligibility.
A. Equal Protection
¶11       The Equal Protection Clause of the Fourteenth Amendment provides that no state shall “deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const. amend. XIV, § 1. Although the Colorado Constitution contains no equal protection clause, we have construed the due process clause of the Colorado Constitution to imply a similar guarantee. See Colo. Const. art. II, § 25; People v. Stewart, 55 P.3d 107, 114 (Colo. 2002); People v. Estrada, 601 P.2d 619, 620 (Colo. 1979). Equal protection of the laws assures the like treatment of all persons who are similarly situated. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985); People v. Cagle, 751 P.2d 614, 619 (Colo. 1988); People v. Mozee, 723 P.2d 117, 126 (Colo. 1986).
¶12       Where a party raises an equal protection challenge, the level of judicial scrutiny varies with the type of classification used and the nature of the right affected. People v. Diaz, 2015 CO 28, ¶ 25, 347 P.3d 621, 626–27. We apply rational basis review where, as here, the challenged law does not impact a traditionally suspect class or implicate a fundamental right. Id.; People v. Alexander, 797 P.2d 1250, 1255 (Colo. 1990). Under rational basis review, the challenging party must prove that the statute’s classification bears no rational relationship to a legitimate legislative purpose or government objective, or that the classification is otherwise unreasonable, arbitrary, or capricious. Diaz, ¶ 25, 347 P.3d at 626–27.
¶13       In applying rational basis review to an equal protection challenge to a statutory classification, we do not decide whether the legislature has chosen the best route to accomplish its objectives. See HealthONE v. Rodriguez ex rel. Rodriguez, 50 P.3d 879, 894 (Colo. 2002) (“That we might believe the decision [the legislature] reached was not the best policy, or that we might have reached a different decision, does not entitle us to overrule the legislature’s decision absent a firm conviction that the decision is irrational.”); People v. Turman, 659 P.2d 1368, 1374 (Colo. 1983). Moreover, “[s]imply because a statutory classification creates a harsh result in one instance does not mean that the statute fails to meet constitutionality requirements under the rational basis standard.” Diaz, ¶ 25, 347 P.3d at 627 (quoting Pace Membership Warehouse v.  Axelson, 938 P.2d 504, 507 (Colo. 1997)). Our inquiry is limited to whether the scheme as constituted furthers a legitimate state purpose in a rational manner. Bellendir v.  Kezer, 648 P.2d 645, 646–47 (Colo. 1982). If any state of facts reasonably can be conceived that justify the classification, the courts will assume the existence of such facts in order to uphold the legislation. People v. Goodale, 78 P.3d 1103, 1107 (Colo. 2003) (citing People v. McKenzie, 458 P.2d 232, 234 (Colo. 1969)).
¶14       In the criminal law context, the U.S. Supreme Court has held that where a defendant’s conduct violates more than one criminal statute, the government’s choice to prosecute under the statute with the harsher penalty does not violate federal equal protection, absent evidence of selective enforcement based on a prohibited standard such as race, religion, or other arbitrary classification. See United States v. Batchelder, 442 U.S. 114, 124–25 & n.9 (1979). Shortly after Batchelder, this court declined to apply the reasoning of that decision to the Colorado Constitution’s due process equal protection guarantee. Estrada, 601 P.2d at 620–21. In contrast to Batchelder, we have held that Colorado’s guarantee of equal protection is violated where two criminal statutes proscribe identical conduct, yet one punishes that conduct more harshly. See, e.g., People v. Mumaugh, 644 P.2d 299, 300–01 (Colo. 1982) (holding that defendant’s conviction of a class 1 traffic offense proscribing leaving the scene of an accident violated equal protection because it was not sufficiently distinguishable from a class 2 traffic offense proscribing virtually identical conduct); People v. Marcy, 628 P.2d 69, 80 (Colo. 1981) (holding that the statutory definition of extreme indifference murder violated equal protection because it was indistinguishable from the lesser offense of second degree murder); People v. Calvaresi, 534 P.2d 316, 318–19 (Colo. 1975) (holding that the felony manslaughter statute violated equal protection because it was not sufficiently distinguishable from the misdemeanor offense of criminally negligent homicide).
¶15       On rare occasions, we have also held that Colorado’s guarantee of equal protection is violated where two statutes proscribe similar conduct, yet the scheme imposes the harsher penalty for acting with intent to cause, or for actually causing, a less grievous result. See, e.g., People v. Nguyen, 900 P.2d 37, 38–40 (Colo. 1995) (holding that the second degree assault statute violated equal protection because it established a higher sentencing range for attempt to commit bodily injury with a deadly weapon than for attempt to commit serious bodily injury with a deadly weapon, and thus “impose[d] a harsher penalty for less serious criminal conduct”); Smith v. People, 852 P.2d 420, 422 (Colo. 1993) (holding that the sentencing scheme for second degree assault violated equal protection because it imposed a greater term of incarceration (through a mandatory sentence enhancement) for acting with intent to cause bodily injury than for acting with intent to cause serious bodily injury); People v. Montoya, 582 P.2d 673, 675–76 (Colo. 1978) (concluding that the first degree assault statute violated equal protection because it subjected a person acting in the heat of passion to a harsher penalty for causing serious bodily injury than for causing death under the manslaughter statute).
¶16       We have acknowledged, however, that the General Assembly has the prerogative to establish the penalties for criminal offenses and is entitled to establish more severe penalties for acts it believes have greater social impact and graver consequences. Smith, 852 P.2d at 421. When the legislature defines criminal offenses and establishes corresponding penalties, equal protection is not violated so long as the legislative classification is not arbitrary or unreasonable, and the differences in the provisions bear a reasonable relationship to the public policy to be achieved. People v. Czajkowski, 568 P.2d 23, 25 (Colo. 1977). In other words, equal protection is not violated where differences in treatment are rationally justified. See, e.g., Goodale, 78 P.3d at 1103 (rejecting an equal protection challenge to a statute that permitted a court to order treatment for users of controlled substances other than marijuana and required the court to dismiss further proceedings upon the defendant’s successful completion of the program, reasoning that there are legitimate differences between marijuana and other more dangerous drugs); People v. Fuller, 791 P.2d 702, 705 (Colo. 1990) (concluding that the mandatory consecutive sentencing provision in section 16-11-309, C.R.S. (1986), did not violate equal protection because “[t]he General Assembly could have rationally decided that violent crimes committed as part of the same incident pose a greater threat to society than the same criminal conduct committed separately in different violent criminal episodes”).
¶17       We now turn to the statutory scheme at issue here.
B. Interplay of Sections 18-1.3-801 and 17-22.5-403
¶18       Dean’s equal protection claim rests on the interplay between the habitual criminal statute (section 18-1.3-801) and the parole eligibility statute (section 17-22.5-403). Before turning to the merits of Dean’s claim, we first describe the habitual criminal sentencing scheme and the corresponding parole eligibility provisions.
¶19         The habitual criminal statute, § 18-1.3-801, targets recidivist offenders and imposes punishments that increase with the severity of the offender’s criminal history. See People v. Nees, 615 P.2d 690, 693 (Colo. 1980) (observing that “the policy of the habitual criminal statute is to punish repeat offenders”). The sentencing provisions that apply to habitual offenders with a less serious criminal history require offense-specific sentencing calculations. For these offenders, the court applies a multiplier to the maximum presumptive range sentence of the triggering offense; the multiplier increases with the severity of the triggering offense and the offender’s prior convictions. For example, under subsection (1.5), the court must sentence a defendant to three times the maximum presumptive range sentence for his triggering offense (any class 1, 2, 3, 4, or 5 felony, or level 1, 2, or 3 drug felony) where the defendant has two prior felony convictions within ten years of the triggering offense. § 18-1.3-801(1.5)(a). Under subsection (2), the court must sentence a defendant to four times the maximum presumptive range sentence for his triggering offense (any felony) where the defendant has been previously convicted of at least three felonies that do not qualify for a sentence of life imprisonment under subsection (1). § 18-1.3-801(2)(a)(I)(A), (4).2
¶20       The harshest sentencing provisions apply to habitual offenders who commit serious felonies and who have the most serious criminal history. Subsection (1) mandates life imprisonment for a defendant convicted of any class 1 or 2 felony, a class 3 felony that is a crime of violence, or a level 1 drug felony, where the defendant has been twice convicted previously for such offenses. § 18-1.3-801(1)(a); see also § 18-1.3-801(4) (a defendant who meets the criteria for subsection (1) must be sentenced under that provision). Similarly, subsection (2.5) requires life imprisonment for an offender who has already been adjudicated an habitual criminal under subsection (2) and who thereafter is convicted of a felony that is a crime of violence. § 18-1.3-801(2.5).
¶21       Parole is governed by Title 17, Article 22.5 of the Colorado Revised Statutes. The legislature has recognized the importance of extending parole eligibility to inmates in order to encourage good behavior in prison and to encourage successful reintegration of convicted offenders into society. §§ 17-22.5-102.5(1)(c), -401, C.R.S. (2015). The parole scheme established by the legislature focuses on assuring that the length of incarceration and period of parole supervision are related to the seriousness of the offense. § 17-22.5-102.5(1)(a).
¶22       Section 17-22.5-403 sets forth Colorado’s parole eligibility timeframes. These timeframes are generally expressed as a percentage of the sentence imposed and vary depending on the severity of the crime for which the offender has been convicted. For most felony offenses, an inmate is eligible for parole after serving fifty percent of his or her sentence. § 17-22.5-403(1). For more serious felonies, such as second degree murder, first degree assault, first degree kidnapping, first degree arson, first degree burglary, and aggravated robbery,3 an inmate must serve seventy-five percent of his or her sentence before becoming eligible for parole. § 17-22.5-403(2.5)(a).4 Although the legislature has also extended parole eligibility to defendants sentenced to life imprisonment under the habitual criminal statute, such eligibility is not expressed as a percentage of the sentence imposed; rather, for such offenders, the legislature has set parole eligibility after the offender serves at least forty calendar years. § 17-22.5-104(d)(I), (III); see also § 18-1.3-801(1)(c), (2.5).
C. Dean’s Equal Protection Claim
¶23       Dean argues that the interplay of the habitual criminal statute and the parole eligibility statute, as applied in his case, violates his right to equal protection because he must serve a longer period of incarceration before he is eligible for parole than an habitual offender with a history of more serious felony convictions who is sentenced to life imprisonment. He maintains that this disparity in the timing of parole eligibility punishes him more harshly for less serious prior conduct.
¶24       The trial court sentenced Dean under subsection (2) of the habitual criminal statute because his five previous felony convictions did not meet the criteria for a sentence of life imprisonment under subsection (1). § 18-1.3-801(2), (4). Subsection (2) required the trial court to sentence Dean to ninety-six years in prison, or four times the maximum presumptive range sentence for Dean’s triggering offense, second degree murder. §§ 18-1.3-801(2)(I)(A), -401(1)(a)(V)(A), 18-3-103, C.R.S. (2015). Under the parole eligibility statute, an offender such as Dean, who is convicted of second degree murder, is eligible for parole after serving seventy-five percent of his sentence, or, for Dean, seventy-two years. § 17-22.5-403(2.5)(a).
¶25       Dean does not directly challenge the length of his sentence. Rather, his claim rests on the timing of his parole eligibility as compared to an habitual offender sentenced to life imprisonment under subsection (1) of the habitual criminal statute. In essence, Dean maintains that the statutory scheme violates equal protection anytime the parole eligibility period for a subsection (2) offender exceeds forty years—the eligibility period established by the legislature for subsection (1) offenders who are sentenced to life imprisonment. We disagree.
¶26       First, the sentencing scheme under the habitual criminal statute is rationally designed to punish repeat offenders in accordance with the offender’s triggering offense and criminal history. The General Assembly chose to sentence recidivist offenders with a history of more serious felonies to mandatory life imprisonment. § 18-1.3-801(1). For offenders with a history of less violent felonies, the legislature chose to anchor the offender’s sentence to the gravity of the triggering offense by applying a multiplier to the presumptive maximum sentence of the triggering offense, and increasing that multiplier based on the seriousness of the offender’s prior criminal history. See § 18-1.3-801(1.5), (2). This sentencing scheme rationally imposes greater punishment on a recidivist offender who has escalated to more serious crimes. As applied to Dean, the legislature’s sentencing choices remain rational.
¶27       Second, the parole eligibility scheme is likewise rational. The legislature has recognized the importance of extending parole eligibility to inmates to encourage good behavior in prison and to encourage successful reintegration of a convicted offender into society. §§ 17-22.5-102.5(1)(c), -401. In addition, the parole eligibility scheme is rationally designed to ensure general congruence between the seriousness of the sentence imposed and the sentence actually served. To that effect, the legislature generally has established parole eligibility as a percentage of the sentence imposed, and has chosen to increase that percentage for more serious offenses. § 17-22.5-403(1)–(2). However, the premise of anchoring parole eligibility to a percentage of the sentence imposed is unworkable with respect to a life sentence because the duration of such a sentence depends on how long the inmate lives. Thus, to extend parole eligibility to habitual offenders serving a life sentence, the legislature had to establish a specific number of years at which an offender is eligible for parole. Certainly the legislature might have chosen a number greater than forty years. Our inquiry, however, is limited to whether the scheme as constituted furthers a legitimate government purpose. Here, the legislature reasonably balanced the desire to extend parole eligibility to habitual offenders serving a life sentence with the legitimate government interest in public safety by requiring such offenders to serve a lengthy, finite period of incarceration (“at least forty calendar years”) before becoming eligible for parole. §§ 17-22.5-104(1)(d)(III), 18-1.3-801(1)(c).
¶28       Finally, Dean’s claim fails because, for purposes of an equal protection claim, this court weighs the relative harshness of a penalty by looking principally to the overall potential term of imprisonment, not the timing of parole eligibility. See People v. Alexander, 797 P.2d 1250, 1254–55 (Colo. 1990). Release on parole prior to an offender’s mandatory release date is entirely discretionary. A convicted person has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). Nor does Colorado’s parole eligibility statute create any expectation of release before the expiration of a valid sentence. Andretti v. Johnson, 779 P.2d 382, 384 (Colo. 1989). The timing of parole eligibility therefore is not dispositive when comparing the relative harshness of sentences. People v. Montgomery, 737 P.2d 413, 416 (Colo. 1987) (“An inmate’s parole eligibility date, although not without some significance, is neither the exclusive nor controlling consideration in determining the relative severity of alternative sentences.”).
¶29       Our holding in People v. Alexander illustrates that the timing of parole eligibility is not a dispositive consideration in comparing the relative harshness of sentences for purposes of equal protection. 797 P.2d at 1254–55. In that case, the defendant, an habitual offender, likewise challenged the timing of his parole eligibility as a violation of his right to equal protection. Id. Alexander was sentenced as an habitual offender to fifty years in prison. Id. at 1253. Under the statutory scheme in place at that time, he was required to serve approximately twenty-three years before becoming eligible for parole. Id. at 1254. By contrast, an habitual offender sentenced to life imprisonment became eligible for parole after serving twenty years. Id. Alexander argued that this scheme violated his right to equal protection based on this disparity in the timing of parole eligibility. Id. at 1255. We rejected Alexander’s contention as without merit, reasoning that “the statutory scheme which gives the parole board discretionary power to grant parole on the basis of factors other than the length of a prisoner’s sentence is reasonably related to a legitimate government interest.” Id. In other words, the discretionary nature of the board’s power to release an offender on parole is itself rational, and thus does not implicate equal protection concerns because the exercise of that discretionary power may lead to the different treatment of offenders.
¶30       We perceive no meaningful distinction between Dean’s claim and the virtually identical claim we rejected in Alexander. Whatever the limited reach of our equal protection doctrine in the area of criminal law, it does not extend to claims based on the comparative timing of parole eligibility.
IV. Conclusion
¶31       We hold that the habitual criminal sentencing and parole scheme, as applied to Dean, does not violate Colorado’s guarantee of equal protection. Accordingly, we affirm the judgment of the court of appeals and remand with directions to correct the mittimus.[5]

[1] We granted review of the following issue:

Whether the court of appeals reversibly erred by holding that it does not violate the equal protection clauses of the United States and Colorado Constitutions to sentence an habitual offender, who was convicted of second degree murder and has no prior violent felony convictions, more harshly than if he had prior violent felony convictions.

[2] A subsection (2) offender whose triggering offense is a level 1 drug felony must be sentenced to sixty-four years in prison. § 18-1.3-801(2)(A)(I)(B).
[3] Section 17-22.5-403(2.5) applies to persons who commit such offenses on or after July 1, 2004, where the offense constitutes a class 2 or 3 felony. § 17-22.5-403(2.5)(b)(I). It also applies to persons convicted of such offenses where the offense constitutes a class 4 or 5 felony and the person previously has been convicted of a crime of violence. Id. § -403(2.5)(b)(II).
[4] Offenders may accrue earned time under either of these parole schemes. § 17-22.5-403(1), (2.5)(a).
[5] As noted by the court of appeals, People v. Dean, 2012 COA 106, ¶ 55, 292 P.3d 1066, 1077, the mittimus incorrectly states that Dean was convicted of first degree murder, when he was actually convicted of second degree murder. We remand to the court of appeals with directions to return the matter to the trial court for correction of the mittimus.