JUSTICE GABRIEL, dissenting.
¶56 In this juvenile delinquency proceeding, the juvenile and two teenage girls with whom he had had relationships texted nude selfies to one another. Despite the facts that sexting like this has become common in our society and that the juvenile and the girls engaged in the same conduct, the prosecution charged the juvenile (but not the girls) with conduct that, if committed by an adult, would amount to sexual exploitation of a child. The juvenile was adjudicated a delinquent, and the majority today upholds his adjudication, forever branding him as a sex offender, notwithstanding the fact that if the same acts were committed today, the juvenile would be subject to nothing more than a civil infraction. See § 18-7-109(3), C.R.S. (2018).
¶57 Unlike the majority, I do not believe that the prosecution established that the juvenile committed sexual exploitation of a child. Moreover, I am concerned that the majority's construction of the sexual exploitation statute gives rise to a number of constitutional infirmities.
¶58 Accordingly, I respectfully dissent.
I. Analysis
¶59 The majority has laid out the pertinent facts in this case. Accordingly, I begin by setting forth our standard of review and the applicable rules of statutory construction. I then proceed to discuss why, in my view, the juvenile has not committed sexual exploitation of a child within the meaning of the version of section 18-6-403, C.R.S. (2017), at issue here. I conclude by explaining why I believe the majority's construction of that statute creates constitutional problems.
*1062 A. Standard of Review and Principles of Statutory Construction
¶60 We review issues of statutory interpretation de novo. Doubleday v. People , 2016 CO 3, ¶ 19, 364 P.3d 193, 196. In construing a statute, our primary purpose is to ascertain and give effect to the legislature's intent. Id. To do so, we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings. Id. We read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage. Id.
¶61 We must also endeavor to effectuate the purpose of the legislative scheme. In doing so, we read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results. Id. at ¶ 20, 364 P.3d at 196. If the statute is unambiguous, then we need look no further. Id.
B. Section 18-6-403
¶62 Section 18-6-403(3)(b.5) provides that a person commits sexual exploitation of a child if, as pertinent here, he or she knowingly "[p]ossesses or controls any sexually exploitative material for any purpose."
¶63 "Sexually exploitative material" is defined as "any photograph, motion picture, video, recording or broadcast of moving visual images, print, negative, slide, or other mechanically, electronically, chemically, or digitally reproduced visual material that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." § 18-6-403(2)(j).
¶64 "Explicit sexual conduct," in turn, means "sexual intercourse, erotic fondling, erotic nudity, masturbation, sadomasochism, or sexual excitement." § 18-6-403(2)(e).
¶65 And, pertinent here, "erotic nudity" is defined as
the display of the human male or female genitals or pubic area, the undeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.
§ 18-6-403(2)(d).
¶66 My difference of opinion with the majority principally stems from its definition of the above-quoted phrase, "one or more of the persons involved." Relying on our opinion in People v. Batchelor , 800 P.2d 599 (Colo. 1990), the majority opines that the juvenile was a "person involved" within the meaning of the above-quoted definition of "erotic nudity." Maj. op. ¶¶ 49-52. The majority then concludes that substantial and sufficient evidence in the record supported the trial court's conclusion that the photos constituted erotic nudity for purposes of the sexual exploitation statute. Id. at ¶ 54. Because in my view the majority's conclusion is inconsistent with Batchelor and effectively reads the phrase "of one or more of the persons involved" out of section 18-6-403(2)(d), I respectfully disagree with that conclusion.
¶67 In Batchelor , 800 P.2d at 600, the defendant went into his sleeping nine-year-old daughter's bedroom, pulled her panties down, took a photo, and then changed her position and took several more photos. He was charged and convicted of one count of sexual exploitation of a child on the theory that his photographs depicted "erotic nudity" within the meaning of section 18-6-403(2)(d).
¶68 The defendant challenged his conviction, arguing that in order for material to constitute "erotic nudity," the material must depict the person photographed in a condition of real or simulated overt sexual gratification or stimulation. Id. at 603. We disagreed. Id. As pertinent here, we observed that the statute does not require that the "real or simulated overt sexual gratification or stimulation" be depicted in the material. Id. at 604. We further stated that (1) the "involved" person or persons "are not always depicted in the material" and (2) "if the sexual gratification is of a person not in the material, the sexual gratification of that person need not be shown in the material." Id. We then concluded, on the facts there before us, that "the overt sexual gratification was of *1063 [the defendant], the maker of the photograph ." Id. (emphasis added).
¶69 The majority sees no meaningful difference between the defendant's conduct in Batchelor and that of a person who verbally instructs a child to assume the same erotic pose and take a nude selfie for the same purpose. Maj. op. ¶ 51. Nor does the majority see a distinction between the defendant's conduct in Batchelor and that of a defendant who uses electronic media to solicit or orchestrate such photographs. Id. at ¶ 52. The majority thus concludes that substantial and sufficient evidence supported the trial court's conclusion that the photos constituted "erotic nudity" within the meaning of section 18-6-403(2)(d). Id. at ¶ 54. For several reasons, I disagree.
¶70 First, no evidence in this case supports the majority's suggestion that the juvenile here verbally instructed the girls involved to assume any particular erotic pose. Nor did he in any way "orchestrate" the photos at issue. The evidence shows that he did no more than request that the girls send him nude selfies.
¶71 Second, although the majority sees no material difference between the defendant's conduct in Batchelor and the juvenile's conduct here, I believe that the actions are distinguishable and that the difference is dispositive.
¶72 In my view, under any definition of "person involved," one who stages and then takes photographs of a child for his or her sexual gratification (i.e., one who is the "maker" of a photograph) is "involved" in the display of the child's body. See, e.g. , Involve , Webster's Third New International Dictionary (2002) (defining "involve," in pertinent part, to mean "to draw in as a participant").
¶73 In contrast, under any potentially applicable definition of the term "involved," I do not believe that a juvenile who merely asks two girls who are not in his presence to send him nude photographs of themselves can be said to be "involved" in the displays of the girls' bodies. See id. In those circumstances, the juvenile did not in any way "make" the depictions, as the defendant did in Batchelor . Nor was he a participant in the depictions. And he did not cause the depictions to be made or stage the depictions against the girls' will or without their consent. The girls took and sent the photographs, and no one forced them to do so.
¶74 Finally, the majority's ultimate conclusion that substantial and sufficient evidence supported the juvenile's adjudication here because "the sexually explicit content of the photos and the circumstances surrounding their creation, including [the juvenile's] direct and repeated solicitation of them, demonstrate they were made for the purposes of the juvenile's 'overt sexual gratification,' " maj. op. ¶ 54, indicates that the majority has effectively read the phrase "of one or more of the persons involved" out of section 18-6-403(2)(d).
¶75 Specifically, the majority appears to read that provision to define "erotic nudity" as
the display of the human male or female genitals or pubic area, the undeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved.
or
the display of the human male or female genitals or pubic area, the undeveloped or developing genitals or pubic area of the human male or female child, the human breasts, or the undeveloped or developing breast area of the human child, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved the person who solicited the material.
¶76 We, however, are not at liberty to rewrite a statute, nor may we construe it so as to render any of its terms meaningless. See Doubleday , ¶ 20, 364 P.3d at 196 ; see also Turbyne v. People , 151 P.3d 563, 567 (Colo. 2007) ("We do not add words to [a] statute or subtract words from it."). In my view, that is what the majority has done here.
¶77 For these reasons, I would conclude that the juvenile was not a "person involved"
*1064 in the depiction of the girls' bodies here and that therefore the evidence against him was legally insufficient to support his adjudication for sexual exploitation of a child.
C. Constitutional Concerns
¶78 Although my analysis is based on the plain language of the sexual exploitation of a child statute, I feel compelled to note that, unlike the majority's construction, my interpretation of the statute avoids constitutional infirmities. The majority's broad construction, in contrast, implicates overbreadth, vagueness, and equal protection concerns, and I briefly explain why.
¶79 "The overbreadth doctrine addresses the concern that the scope of a law may be so broad that it restricts speech protected by the First Amendment or has a chilling effect on such constitutionally protected speech." People v. Graves , 2016 CO 15, ¶ 12, 368 P.3d 317, 322.
¶80 In considering a facial challenge to a statute on the ground that it is overbroad, courts first must determine "whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc. , 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (footnote omitted).
¶81 Here, construing section 18-6-403 so broadly as to encompass a teenager's request that another teenager send a nude selfie strikes me as potentially implicating a juvenile's right to free speech. This is particularly true here, where the conduct did not involve any sort of physical manipulation or compulsion but rather encompassed a group of teenagers doing what teenagers often-albeit perhaps foolishly-do, namely, text nude selfies to one other.
¶82 Similarly, I am concerned that the majority's reading of "person involved" is so broad as to render it meaningless, thereby creating a constitutional vagueness problem. A criminal statute is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." Johnson v. United States , --- U.S. ----, 135 S. Ct. 2551, 2556, 192 L.Ed.2d 569 (2015). Thus, the vagueness doctrine requires that a criminal statute "be framed with sufficient clarity to alert all who are subject to its sanctions to the nature of the proscribed behavior and to inform them of permissible standards of conduct, that they may conduct themselves accordingly." People v. Randall , 711 P.2d 689, 691 (Colo. 1985).
¶83 Here, given the breadth of the majority's construction of the phrase "person involved," I fear that those subject to the statute can no longer know what conduct the statute will now be deemed to cover.
¶84 Finally, I am concerned that the majority's construction of the statute creates equal protection problems. Equal protection concerns are implicated when the prosecution selectively enforces a statute based on a prohibited standard such as race, religion, or some other arbitrary classification. See Dean v. People , 2016 CO 14, ¶ 14, 366 P.3d 593, 597. In addition, "[w]here two statutes provide disparate penalties for similar criminal conduct, equal protection guarantees are violated." People v. Montoya , 196 Colo. 111, 582 P.2d 673, 675 (1978).
¶85 Here, the juvenile and both of the girls who were involved engaged in the same conduct, yet only the juvenile was charged. For me, this raises the specter of selective enforcement of this statute based on gender. Moreover, I am troubled by the fact that, based solely on timing, a person in the juvenile's position faces either an adjudication that will brand him as a sex offender (and require him to register as such) or simply a civil penalty. To me, this vast difference in consequences presents serious equal protection concerns.
¶86 For these reasons, I would conclude that the prosecution has not established that the juvenile committed sexual exploitation of a child.
II. Conclusion
¶87 I anticipate that when many read or learn of the majority's opinion in this case, they will be surprised by the result. Although to be sure, the proper application of the law *1065 in a given case can sometimes produce a result that some would deem counterintuitive, I do not believe that this should be such a case. In my view, under the plain language of section 18-6-403, the acts of sexting that occurred here do not constitute sexual exploitation of a child, and the juvenile should not be branded as a sex offender for having participated in such foolish-albeit not uncommon-acts. Moreover, for the reasons discussed above, I believe that the majority's interpretation of the statute creates constitutional infirmities that a proper (and narrower) construction would avoid.
¶88 For these reasons, I would reverse the judgment of the division below, and therefore I respectfully dissent.
I am authorized to state that JUSTICE HART joins in this dissent.