Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 24, 2020

**2020 CO 15**

**No. 18SC326, *Howard v. People*—Sentencing—Juvenile Law—Crimes of Violence—Probation.**

In this case, the supreme court considers whether the differences in sentencing guidance in the direct-file statute, § 19-2-517, C.R.S. (2019), and the transfer statute, § 19-2-518, C.R.S. (2019), implicate a juvenile's right to equal protection. Specifically, the supreme court considers whether a juvenile who is subject to the direct-file statute and convicted of a crime of violence is eligible for probation when a juvenile who is subject to the transfer statute and convicted of the same crime of violence would not be eligible for probation. The supreme court holds that under these facts, there is no equal protection violation because the district court did not apply the mandatory minimum sentencing provisions in the crime of violence statute and neither direct-filed juveniles nor transferred juveniles convicted of crimes of violence are eligible for probation. Accordingly, the judgment of the court of appeals is affirmed on different grounds.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 15

### Supreme Court Case No. 18SC326
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA629

**Petitioner:**

Nevik Dean Howard,

v.

**Respondent:**

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
February 24, 2020

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
John Plimpton, Deputy Public Defender
  *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
William G. Kozeliski, Senior Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Amici Curiae Colorado Juvenile Defender Center, Colorado Criminal Defense Bar, and Office of Alternate Defense Counsel:**
Law Offices of Ann M. Roan, LLC
Ann M. Roan
  *Boulder, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1    There are two ways that a juvenile can be charged as an adult in district court. First, the juvenile can be charged directly in district court under section 19-2-517, C.R.S. (2019) (the "direct-file statute"). Second, the juvenile can be transferred to the district court from the juvenile court under section 19-2-518, C.R.S. (2019) (the "transfer statute"). This case concerns the sentencing options available for direct-filed juveniles as compared to transferred juveniles who are both convicted of crimes of violence as defined in section 18-1.3-406, C.R.S. (2019) (the "crime of violence statute").

¶2    Nevik Howard, a sixteen-year-old, was convicted of first-degree assault (a crime of violence) and first-degree criminal trespass after his case was transferred from juvenile court to district court. During the sentencing hearing, Howard argued that he was subject to a more severe penalty for a crime of violence conviction under the transfer statute than he would be if this were a direct-file case because direct-filed juveniles are exempted "from the mandatory minimum sentencing provisions in [the crime of violence statute]," whereas transferred juveniles are not. Thus, he argued that his equal protection rights were violated. To address that equal protection concern, the district court determined that the mandatory minimum sentencing provisions in the crime of violence statute would not apply in this transfer proceeding, just as they would not apply in a direct-file proceeding. The court further determined, however, that this ruling did not make

Howard eligible for probation. Instead, the court concluded that the statutory scheme only allowed either (1) a youth offender services ("YOS") sentence with a suspended Department of Corrections ("DOC") sentence, or (2) a DOC sentence. The court ultimately sentenced Howard to six years in YOS with a suspended fifteen-year DOC sentence.

¶3 Howard appealed, arguing that the district court violated his equal protection rights by concluding that he was not eligible for probation under the transfer statute when he would have been under the direct-file statute. The court of appeals affirmed Howard's sentence, holding that "equal protection [did] not apply" because "Howard [was] not similarly situated to direct file eligible juveniles." *People v. Howard*, No. 15CA629, ¶ 35 (Mar. 22, 2018).

¶4 We granted certiorari[1] and affirm the court of appeals on different grounds. We hold that, under these facts, there is no equal protection violation because neither direct-filed juveniles nor transferred juveniles convicted of crimes of violence are eligible for probation, and the district court did not apply the mandatory minimum sentencing provisions in the crime of violence statute.

---

[1] We granted certiorari to review the following issue:

> Whether the disparate sentencing guidance in the transfer statute, § 19-2-518, C.R.S. (2018), and the direct file statute, § 19-2-517, C.R.S. (2018), implicates a juvenile's right to equal protection.

3

Hence, Howard was treated the same as a direct-filed juvenile would have been with regard to probation and the applicable sentencing range. As a result, there is no equal protection problem under the facts here.

## I. Facts and Procedural History

¶5 Following a car break-in and stabbing, Howard, who was sixteen at the time, was charged with first-degree assault (a crime of violence) and first-degree criminal trespass in juvenile court. After filing a delinquency petition in juvenile court, the People then moved to transfer Howard's case to district court. Following a transfer hearing, the case was transferred to the adult court, and Howard was treated accordingly.

¶6 Early in the district court proceedings, Howard noted a disparity in the sentencing options under the direct-file and transfer statutes. Under the direct-file statute, a juvenile convicted of a crime of violence shall be sentenced "[a]s an adult," except that the "juvenile is excluded from the mandatory minimum sentencing provisions in section 18-1.3-406 [the crime of violence statute]." § 19-2-517(6)(a)(I).[2] The transfer statute, however, does not contain the same

_____

[2] The General Assembly amended the direct-file statute in 2012 to add this mandatory minimum exemption. *See* Ch. 128, sec. 1, § 19-2-517, 2012 Colo. Sess. Laws 439, 444. Broadly speaking, the 2012 amendments limited the district attorney's discretion to direct-file against juveniles in district court, reserving the use of the direct-file statute for more serious offenders and offenses. *Id.* at 439–44.

exclusion from mandatory minimum sentencing. Instead, a transferred juvenile who is convicted of a crime of violence "shall [be] sentence[ed] . . . pursuant to the provisions of section 18-1.3-401," which provides the presumptive penalties and sentences in criminal cases. § 19-2-518(1)(d)(I); *see also* § 18-1.3-401, C.R.S. (2019). Howard argued that this sentencing disparity violated his right to equal protection because it subjected him to mandatory incarceration and a mandatory minimum sentence, whereas direct-filed juveniles convicted of the same offense would be eligible for probation and would be excluded from the mandatory minimum sentencing provisions despite having worse criminal histories.[3] The district court initially denied Howard's request on ripeness grounds, noting that the issue was not properly before the court unless or until Howard was convicted of first-degree assault and subject to sentencing.

¶7    Ultimately, the jury found Howard guilty as charged. At the sentencing hearing, Howard renewed his equal protection argument, asserting that the "excluded from the mandatory minimum sentencing provisions" language in the

---

[3] For example, to be direct-file eligible, a juvenile charged with the same crime of violence as Howard would also need to have a prior adjudicated felony offense. *See* § 19-2-517(1)(a)(III)(A)–(B). In such a scenario, the juvenile eligible for direct filing would have a more serious criminal history than Howard, who did not have a prior adjudicated felony.

direct-file statute made direct-filed juveniles eligible for probation, whereas he, as a transferred juvenile, would face the mandatory minimum sentencing that would subject him to a ten- to thirty-two-year sentence in the DOC and would render him ineligible for probation. He thus contended that it would violate equal protection if probation was not also an option under the transfer statute. To address the equal protection argument, the district court determined that "mandatory minimums don't apply" here. It further concluded, however, that Howard was not eligible for probation. Accordingly, the district court concluded that the sentencing options were a YOS sentence with a suspended DOC sentence or a DOC sentence with a range of zero to thirty-two years.[4] Ultimately, the court sentenced Howard to six years in YOS, with a suspended fifteen-year DOC sentence.

¶8 Howard appealed. A division of the court of appeals concluded that "equal protection [did] not apply" because "Howard [was] not similarly situated to direct file eligible juveniles." *Howard*, ¶ 35. The division reasoned that Howard was not

---

[4] In practical terms, if Howard was not subject to the mandatory minimum sentence, he would face a presumptive sentencing range of four to thirty-two years. *See* § 18-1.3-401(1)(a)(V)(A); § 18-1.3-401(10)(a); § 18-1.3-406(1)(a). While the district court concluded that without the mandatory minimums, the sentencing range was zero to thirty-two years, we need not determine if that is correct because the court did not sentence Howard to less than four years. Therefore, we express no opinion on this issue as it is not before us today.

similarly situated because he did not have the same criminal history as a direct-file-eligible juvenile. *Id.* The division further reasoned that "even assuming that the direct file statute is more lenient than the transfer statute, Howard was not subject to it" and thus could not sustain a challenge to it. *Id.* at ¶ 36. Accordingly, the division affirmed Howard's sentence. *Id.* at ¶ 37.

¶9    We granted certiorari.

## II. Analysis

¶10    We begin by outlining the appropriate standard of review. We then review the relevant equal protection law and applicable rules of statutory construction. Next, we detail the relevant sentencing ranges under the direct-file, transfer, and crime of violence statutes. After doing so, we hold that, under these facts, there is no equal protection violation because neither direct-filed juveniles nor transferred juveniles convicted of crimes of violence are eligible for probation, and the court did not subject Howard to the mandatory minimum sentencing provisions in the crime of violence statute. Hence, Howard was treated the same under the transfer statute as juveniles charged under the direct-file statute with regard to probation

and the applicable sentencing range. We therefore affirm the judgment of the court of appeals on different grounds.[5]

## A. Standard of Review

¶11 We review equal protection claims de novo. *Dean v. People*, 2016 CO 14, ¶ 8, 366 P.3d 593, 596. Likewise, we review issues of statutory interpretation de novo. *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389.

## B. General Law

## 1. Equal Protection

¶12 The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. While the Colorado Constitution contains no similar clause, "we have construed the due process clause of the Colorado Constitution to imply a similar guarantee." *Dean*, ¶ 11, 366 P.3d at 596; *see also* Colo. Const. art. II, § 25. "Equal protection of the laws assures the like treatment of all persons who are similarly situated." *Dean*, ¶ 11, 366 P.3d at 596. We have explained, for example, "that Colorado's guarantee of equal protection is violated where two criminal statutes proscribe identical conduct, yet one punishes that

---

[5] Because we conclude that there is no equal protection problem on these facts, we do not address the court of appeals' "similarly situated" analysis.

conduct more harshly." *Id.* at ¶ 14, 366 P.3d at 597; *see also People v. Nguyen*, 900 P.2d 37, 38–40 (Colo. 1995) (explaining that equal protection is violated when two statutes proscribe similar conduct, yet a harsher penalty is imposed for the less serious criminal conduct).

## 2. Rules of Statutory Construction

¶13 When interpreting a statute, "our goal is to give effect to [the] legislative intent." *People v. Hoskin*, 2016 CO 63, ¶ 7, 380 P.3d 130, 133. To do so, we look to the statute's plain language and "give its words and phrases their ordinary and commonly accepted meaning." *Id.* When the statutory language is clear, "we apply it as written" and need not resort to other rules of statutory construction. *Munoz v. Am. Family Mut. Ins. Co.*, 2018 CO 68, ¶ 9, 425 P.3d 1128, 1130. We "disfavor a reading of a statute that would render other statutory provisions superfluous or without practical effect." *Roberts v. Bruce*, 2018 CO 58, ¶ 9, 420 P.3d 284, 286.

## C. The Direct-File, Transfer, and Crime of Violence Statutes

¶14 Howard's equal protection claim rests on the premise that juveniles convicted of crimes of violence under the transfer statute must be sentenced to incarceration and are subject to mandatory minimum sentencing, whereas juveniles subject to the direct-file statute who are convicted of the same crime of violence are eligible for probation and not subject to mandatory minimum

9

sentencing. Accordingly, before turning to the specifics of Howard's claim, we begin by unpacking (1) the sentencing schemes for juveniles charged as adults under both the direct-file statute and the transfer statute, and (2) the general sentencing scheme for defendants convicted of crimes of violence.

### 1. The Direct-File Statute (§ 19-2-517) and the Transfer Statute (§ 19-2-518)

¶15 There are two ways that a juvenile may be tried as an adult in district court. The first way is to charge the juvenile directly in district court under the direct-file statute. § 19-2-517. Direct filing is limited to juvenile offenders who are at least sixteen years old at the time of the offense and (1) are alleged to have committed a class 1 or 2 felony, (2) are alleged to have committed certain sex offenses, (3) are alleged to have committed a crime of violence and have a prior felony offense, or (4) have previously been subject to proceedings in district court under the transfer or direct-file statutes. § 19-2-517(1)(a)(I)–(IV).

¶16 If a direct-filed juvenile is convicted of a crime of violence, then the direct-file statute's sentencing guidelines provide that the "district judge *shall* sentence the juvenile either:" (1) "[a]s an adult; except that *a juvenile is excluded from the mandatory minimum sentencing provisions* in section 18-1.3-406 [the crime of violence

10

statute]"; or (2) to YOS. § 19-2-517(6)(a)(I)–(II) (emphases added).[6] The decision

to direct-file a juvenile in district court is made by the district attorney.[7] Howard

did not fall under any of these provisions and was thus ineligible for direct filing.

If a juvenile is not direct-file eligible, the district attorney then has a second option

to try the juvenile in district court.

¶17     The second option, as utilized in the case here, is that the People can file a

delinquency petition in juvenile court and then move to transfer the case to district

court under the transfer statute. § 19-2-518.[8] Transfer was available here because

Howard was (1) sixteen years old at the time of the alleged offense and (2) charged

with a felony that constituted a crime of violence. *See* § 19-2-518(1)(a)(I).[9]

---

[6] If the court chooses to sentence a juvenile offender to YOS, the court must also impose a suspended DOC sentence. *See* § 18-1.3-407(2)(a)(I), C.R.S. (2019). The sentence imposed in this case provides an example of a combination of YOS and DOC, as the district court imposed a six-year YOS sentence with a suspended fifteen-year DOC sentence.

[7] Under section 19-2-517(3)(a), a juvenile can file a motion requesting that the case be transferred from the district court to the juvenile court. Upon receipt of said motion, the district court must conduct a "reverse-transfer hearing" to determine whether the juvenile and community would be better served by having the case proceed in district court or juvenile court. § 19-2-517(3)(a)–(b).

[8] Before transferring the case, the district court must conduct a transfer hearing, where it considers fourteen statutory factors and then decides whether to waive the juvenile court's jurisdiction over the juvenile. *See* § 19-2-518(4).

[9] We note that there are several additional reasons that make juveniles eligible to be transferred to the district court under the transfer statute. *See* § 19-2-518(1)(a)(I).

11

¶18     If a transferred juvenile is ultimately convicted of a crime of violence, then the transfer statute provides that the "district court shall sentence the juvenile pursuant to the provisions of section 18-1.3-401," the general adult sentencing statute. § 19-2-518(1)(d)(I). That statute provides the presumptive penalties for adults convicted of *any* felony. Under the general adult sentencing scheme, if the defendant is convicted of a crime of violence, then "the court shall sentence the defendant in accordance with the provisions of section 18-1.3-406," the crime of violence statute. § 18-1.3-401(13)(c). The transfer statute also gives the court discretion to sentence the transferred juvenile to YOS, unless the juvenile is convicted of a class 1 felony or certain sexual offenses. § 19-2-518(1)(d)(II). Significantly, the transfer statute, unlike the direct-file statute, does *not* exclude juveniles from the mandatory minimum sentencing provisions of section 18-1.3-406. Thus, transferred juveniles are subject to the mandatory minimum sentencing range for a crime of violence—a term "of at least the midpoint in . . . the presumptive range"—and must be sentenced to incarceration, or to YOS with a suspended DOC sentence.

---

We do not discuss these additional reasons here because they are not relevant to this case.

## 2. The Crime of Violence Statute (§ 18-1.3-406)

¶19 Because Howard's equal protection argument hinges on the different treatment of direct-filed juveniles and transferred juveniles convicted of a crime of violence, we turn to the crime of violence statute specifically. As previously referenced, adult defendants convicted of crimes of violence are subject to mandatory sentences to the DOC that require the sentence to be at least the midpoint and up to double the normal maximum sentence in the presumptive range:

> Any person convicted of a crime of violence *shall be sentenced* pursuant to the provisions of section 18-1.3-401(8) *to the department of corrections for a term of incarceration of at least the midpoint in*, but not more than twice the maximum of, *the presumptive range* provided for such offense in section 18-1.3-401(1)(a), . . . except that, . . . the court, in a case which it considers to be exceptional and to involve unusual and extenuating circumstances, may thereupon modify the sentence, effective not earlier than one hundred nineteen days after his or her placement in the custody of the department. Such modification may include probation if the person is otherwise eligible therefor.

§ 18-1.3-406(1)(a) (emphases added). The plain and ordinary reading of this statute dictates that defendants subject to the mandatory minimum sentencing enhancement, which includes transferred juveniles, face a mandatory prison sentence of at least the midpoint in the presumptive range. Conversely, direct-filed juvenile defendants are exempted from the mandatory minimum provisions, meaning those juveniles could receive a prison sentence that is less than the midpoint in the presumptive range.

¶20    This case provides an opportunity to compare sentencing ranges for juveniles who are convicted of the same crimes of violence under the direct-file and transfer statutes described above. Start with our present case: At the time of the offense, Howard did not have any prior felony adjudications or convictions. He was charged with first-degree assault, first-degree criminal trespass, and two counts of crime of violence as a juvenile. Because Howard did not have any prior felony adjudications or convictions, the only option that was available when the district attorney determined that Howard should be treated as an adult was to try and transfer Howard pursuant to section 19-2-518. After the required hearing, Howard was transferred to the adult court and was ultimately convicted of first-degree assault (a class 3 felony), the crime of violence, and first-degree criminal trespass (a class 5 felony). Because he was subject to the crime of violence sentencing statute and had been transferred, Howard was subject to the mandatory minimum provisions, which carried a sentencing range of at least ten, but not more than thirty-two, years in the DOC.[10] Next, we compare Howard's

---

[10] Class 3 felonies carry a presumptive sentence of four to twelve years. *See* § 18-1.3-401(1)(a)(V)(A). However, because first-degree assault is a crime of violence, the maximum sentence here was enhanced by four years, so the presumptive sentence was four to sixteen years. *See* § 18-1.3-401(10)(a). And because the crime of violence statute directs the court to impose a sentence "of at least the midpoint in, but not more than twice the maximum of, the presumptive

14

actual facts to a hypothetical. If Howard had a prior felony adjudication at the time he committed the assault, then he would have been subject to the direct-file statute. Thus, the district attorney could have directly filed Howard's case in the adult court. Under that scenario, if Howard had been charged under the direct-file statute and was convicted of the exact same offenses, then he would have been exempt from the mandatory minimum provisions and would not be subject to the ten-year mandatory minimum sentence. As a result, a juvenile being treated as an adult with a felony record at the time of the offense would be subject to less time in prison than a juvenile who had a clean record even though they were convicted of the exact same offenses.

¶21    This demonstrates that there is an inequity in sentencing ranges under the direct-file and transfer statutes. And Howard points to this inequity in his equal protection argument. Under the facts here, however, we need not resolve whether that inequity creates an equal protection violation because the district court gave Howard the benefit of the direct-file statute's sentencing range, declining to apply mandatory minimums.[11] Thus, any equal protection violation regarding the

_____

range," Howard's applicable sentencing range under the transfer statute was ten to thirty-two years. *See* § 18-1.3-406(1)(a).

[11] The district attorney did not appeal that decision.

length of a prison sentence caused by the different mandatory minimum sentences in the two statutes is not before us. Instead, the issue in Howard's case is whether probation is an option for juvenile defendants convicted of crimes of violence under the direct-file statute but not under the transfer statute.

### D. Probation Under the Direct-File Statute and the Transfer Statute

¶22 We now turn to the specifics of Howard's claim. As explained above, the direct-file statute provides that a juvenile shall be sentenced "[a]s an adult; except that a juvenile is excluded from the mandatory minimum sentencing provisions in section 18-1.3-406 [the crime of violence statute]." § 19-2-517(6)(a)(I). Howard argues that "if not for the mandatory minimum sentencing provisions in 18-1.3-406, defendants convicted of first-degree assault would be eligible for probation." Howard thus asserts that direct-filed juveniles are probation eligible; conversely, transferred juveniles like himself are *not* excluded from the mandatory minimum sentencing provisions and thus are *not* eligible for probation.[12] Howard contends that this unequal sentencing constitutes an equal protection violation. The People, on the other hand, argue that this exclusion only encompasses the

---

[12] Both parties agree that probation is not an option for transferred juveniles convicted of crimes of violence. The initial sentencing options are either a YOS sentence with a suspended DOC sentence, or a DOC sentence.

16

mandatory sentencing *range*.  In other words, the People contend that although this exclusion allows the court to sentence a direct-filed juvenile to a lesser prison sentence than the mandatory minimum would otherwise require, the court must still impose a YOS sentence or a prison sentence in some form.  We agree with the People.  Looking at the plain language of the direct-file and crime of violence statutes and our maxim to not render statutory provisions superfluous, we conclude that probation is not an option in the first instance.

¶23    To begin, Howard's reading misapprehends the two effects that the crime of violence statute has on defendants who are subject to it. First, the statute enhances the possible prison sentence to "at least the midpoint in, but not more than twice the maximum of, the presumptive range."  § 18-1.3-406(1)(a).  Second, and more importantly here, the crime of violence statute itself makes defendants subject to it ineligible for probation.  Indeed, in other contexts, we have concluded that probation is not an option for defendants who are subject to the crime of violence statute.  *See, e.g.*, *Chavez v. People*, 2015 CO 62, ¶ 19, 359 P.3d 1040, 1044 (explaining that a sex offender was "not probation-eligible because he is also subject to the mandatory crime-of-violence enhancement").  This is so because the statute dictates that probation is not an option outside of one specifically contemplated exception.

17

¶24 That exception permits a mandatory prison sentence to be modified in "exceptional" circumstances and provides that "[s]uch modification may include probation." § 18-1.3-406(1)(a). This modification, however, may only occur 119 days from when the person was placed in DOC to serve the original sentence. *Id.* Logically, if probation was available at the initial sentencing, then the legislature would not have included this modification provision for cases the court finds "to be exceptional and to involve unusual and extenuating circumstances." *Id.* Hence, the need to wait 119 days would be unnecessary, and the exception would be superfluous. *See, e.g.*, *Indus. Claim Appeals Office v. Ortho*, 965 P.2d 1246, 1254 (Colo. 1998) (explaining that "we should avoid a construction that renders any [statutory] provision superfluous or a nullity"). The crime of violence statute does not contemplate probation outside of this modification provision.

¶25 Because the crime of violence statute dictates that defendants subject to it are *not* originally probation eligible, we must next determine whether Howard is correct in his argument that the legislature, in excluding direct-filed juveniles from the "mandatory minimum sentencing provisions in [the crime of violence statute]," intended to make those juveniles eligible for probation. We conclude that such an interpretation would expand the direct-file statute's exclusion beyond the plain and ordinary language of the statute.

¶26    While the direct-file statute does not specify which mandatory minimum provisions juveniles are excluded from, a review of the crime of violence statute as a whole leads to only one conclusion: The legislature was excluding juveniles from the two portions of the crime of violence statute that impose the mandatory minimum *floor* of "at least the midpoint" in the presumptive range. Specifically, sections 18-1.3-406(1)(a) and 18-1.3-406(1)(b) are the only two sections in the crime of violence statute that require mandatory minimum sentencing. Section 18-1.3-406(1)(a) provides, in relevant part, that the person convicted of a crime of violence shall face a mandatory minimum of "at least the midpoint in . . . the presumptive range." Similarly, section 18-1.3-406(1)(b) specifies that the mandatory minimum for certain sex offenses is "at least the midpoint in the presumptive range." And in excluding juveniles "from the mandatory minimum sentencing provisions in [the crime of violence statute]" in the direct-file statute, *see* § 19-2-517(6)(a)(I), the legislature was only referring to these two portions of the crime of violence statute. Importantly, it was not excluding direct-filed juveniles convicted of crimes of violence from mandatory incarceration. The direct-file statute says nothing of that kind. If that was the legislature's intent, then it would have said so. *See, e.g.*, *Weinstein v. Colborne Foodbotics, LLC*, 2013 CO 33 ¶ 16, 302 P.3d 263, 267 (finding that the legislature did not create a remedy that was not present in a statute because had the legislature intended to, it "could have

19

done so"). Instead, the legislature chose to exclude these juveniles from *part* of the crime of violence statute—specifically, the mandatory minimum *floor* of "at least the midpoint" in the presumptive range.

¶27 Furthermore, we note that the direct-file statute does not even mention probation as a sentencing option. If the legislature intended for probation to be an option under the direct-file statute, it could have pointed to the probation sections in the Criminal Code. *See, e.g.*, § 18-1.3-201, C.R.S. (2019). The direct-file statute makes no such reference, and we will "not read into a statute language that is not there." *Marsh v. People*, 2017 CO 10M, ¶ 62, 389 P.3d 100, 113.

¶28 Accordingly, we conclude that in excluding direct-filed juveniles from the mandatory minimum sentencing provisions in the crime of violence statute, the legislature intended to exclude juveniles from the mandatory minimum sentencing *floor* in that statute. In so doing, the legislature gave district courts more discretion to choose the appropriate prison sentence given the specific facts of a juvenile's case. Under this interpretation, the court, using its discretion, could sentence a direct-filed juvenile to the minimum in the presumptive range to up to twice the maximum, but it is no longer required to sentence that juvenile to at least the midpoint of the presumptive range. In other words, the district court has wide discretion to choose the appropriate sentence. Hence, the exclusion allows the court to sentence a juvenile to a *lesser* prison sentence than the mandatory

minimum, but it still does not make probation an option for direct-filed juveniles convicted of crimes of violence. As a result, with regard to probation, the direct-file and transfer statutes treat juveniles the same—neither are eligible for probation.[13]

¶29 Applying this conclusion here means that Howard was not treated differently under the transfer statute than he would have been under the direct-file statute with regard to probation. Accordingly, there is no equal protection violation on these facts.

### III. Conclusion

¶30 For the foregoing reasons, we affirm the judgment of the court of appeals on different grounds.

---

[13] We note that both direct-filed juveniles and transferred juveniles, just like adult defendants, could still have their sentence modified to probation based on the crime of violence statute's exception that allows sentence modification in cases involving "exceptional," "unusual," and "extenuating" circumstances. *See* § 18-1.3-406(1)(a).