The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 30, 2026

## 2026COA32

### No. 24CA1349, *People v. Papol* — Juvenile Court — Direct Filing in District Court

In this postconviction proceeding, a division of the court of appeals considers, for the first time, whether certain statutory processes for criminally prosecuting a juvenile in a district court under the direct file statute in section 19-2-517(1)(a)(I), C.R.S. 2020 — such as a transfer hearing — are jurisdictional or procedural.  If the defendant is age eligible and the criminal offenses for which the defendant is charged are enumerated in the direct file statute — which is the case here — the division concludes that the statutory requirements are procedural, not jurisdictional. As a result, because the defendant in this case entered into a valid plea agreement, he waived any error committed by the district court.

COLORADO COURT OF APPEALS          **2026COA32**

Court of Appeals No. 24CA1349
El Paso County District Court No. 18CR5723
Honorable Robin Chittum, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Edward Papol,

Defendant-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

Announced April 30, 2026

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

K. Andrew Fitzgerald, Alternate Defense Counsel, Grand Junction, Colorado, for Defendant-Appellant

¶ 1     Some juveniles alleged to have violated the law may be adjudicated only in juvenile court based on (1) their age at the time of the alleged offense and (2) the offense they are alleged to have committed.  *See* § 19-2.5-801, C.R.S. 2025.  But juveniles over a certain age, who are alleged to have committed an enumerated offense in the direct file statute, may be criminally prosecuted in district court.  *See Howard v. People*, 2020 CO 15, ¶¶ 1, 15, 17 (describing the various ways a juvenile may be criminally charged in a district court).  Because of this dual justice system, this case presents the following question: Are the prerequisites in the direct file statute for the prosecution initiating a criminal action against a juvenile charged with an enumerated offense jurisdictional or procedural?

¶ 2     The answer to this question is critical because, if the statutory prerequisites in this scenario are procedural, then any errors committed by a district court could be waived if, as is the case here, the defendant entered into a plea agreement.  *See, e.g., Neuhaus v. People*, 2012 CO 65, ¶ 8 ("[A] 'guilty plea represents a break in the chain of events which has preceded it in the criminal process' and waives all non-jurisdictional errors in the defendant's conviction."

1

(quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973))); *see also People v. Butler*, 251 P.3d 519, 520 (Colo. App. 2010) ("A valid, unconditional guilty plea waives all nonjurisdictional objections, including allegations that constitutional rights have been violated."). But if the prerequisites are jurisdictional — meaning the juvenile court has exclusive jurisdiction over the case and a district court may acquire jurisdiction only after the juvenile court satisfies the statutory requirements — then a defendant may raise the district court's lack of subject matter jurisdiction at any time, even, as here, in a postconviction proceeding. *See, e.g., People v. Sandoval*, 2016 COA 57, ¶ 47 ("[A] court's lack of subject matter jurisdiction may not be waived and can be raised at any time in a proceeding, including for the first time on appeal.").

¶ 3     In this case, defendant, James Edward Papol (Papol), appeals the postconviction court's order denying his request under Crim. P. 35(a) and (c) to set aside his plea agreement and vacate his criminal conviction on grounds that the district lacked subject matter jurisdiction over his case. In 1988, when he murdered the victim, M.V., Papol was fifteen years old. But as a cold case, the prosecution did not file charges against Papol until 2018. The

2

prosecution filed the case in district court, but Papol argued it should have been filed in juvenile court and that, as a result of this error, the district court lacked subject matter jurisdiction over his criminal case. The district court, as well as the postconviction court, disagreed with Papol, finding that the 1988 direct file statute, in effect at the time of the murder, applied — which permitted the direct filing of criminal charges against juveniles fourteen years old and older — and therefore his case had been properly filed in district court.

¶ 4 We agree with Papol that his case should have been filed in juvenile court based on the 2012 direct file statute. But we disagree with him that the district court lacked subject matter jurisdiction over his case. Based on Papol's age and the offense he committed, his case was eligible for transfer from the juvenile court to the district court under the 1988 direct file statute, so any error in failing to file in juvenile court — and the absence of a transfer hearing — was *procedural* rather than jurisdictional. This is because, as we discuss in further detail below, Colorado district courts have general jurisdiction over criminal cases, and the General Assembly cannot limit that constitutionally derived

3

jurisdiction after it has granted it. *See* Colo. Const. art. VI, § 9(1); *Garcia v. Dist. Ct.*, 403 P.2d 215, 218 (Colo. 1965). As a result, upon entry of his valid plea agreement, Papol waived the claim that his criminal case was incorrectly filed in district court. Therefore, we affirm the postconviction court's order, albeit on different grounds. *See People v. Thompson*, 2020 COA 117, ¶ 55 n.7.

## I.     Background

¶ 5     M.V. was sexually assaulted and murdered in 1988. Although law enforcement recovered DNA evidence from M.V.'s body, the initial investigation did not lead to any arrests. Almost thirty years later in 2018, using updated technology, an analyst with the Colorado Springs Police Department developed a DNA profile from the evidence previously recovered that matched Papol's DNA. As mentioned, he was fifteen in 1988.

¶ 6     Papol was charged with first degree murder, among other offenses. The prosecution originally filed Papol's case in juvenile court but dismissed it shortly thereafter. The prosecution then filed this action in district court under section 19-2-805(1)(a), C.R.S. 1988. The 1988 statute stated that a "juvenile may be charged by the direct filing of an information in the district court or by

4

indictment only when . . . [t]he juvenile is *fourteen years of age or older* and *is alleged to have committed a class 1 felony.*" *Id.* (emphasis added).

¶ 7     As relevant here, the direct file statute was significantly amended in 2010 and 2012 in three ways.  First, the General Assembly increased the minimum age required for direct filing in district court from fourteen to sixteen years of age for juveniles alleged to have committed a class 1 or class 2 felony.  Ch. 264, sec. 1, § 19-2-517(1)(a)(I), 2010 Colo. Sess. Laws 1199.  *Contrast* § 19-2-517(1)(a)(I), C.R.S. 2009, *with* § 19-2-517(1)(a)(I), C.R.S. 2010.[1] Second, it eliminated direct filing for juveniles fourteen or fifteen years of age.  Ch. 128, sec. 1, § 19-2-517(b)-(c), 2012 Colo. Sess. Laws 440-41.  And finally, it allowed a juvenile whose case was direct filed in district court to request a reverse-transfer hearing to

---

[1] The General Assembly repealed and relocated the juvenile statute in 2021.  Ch. 136, secs. 1-2, 2021 Colo. Sess. Laws 557-773.  The previous section 19-2-517(1)(a)(I), C.R.S. 2020, is now codified at section 19-2.5-801(1)(a)(I), C.R.S. 2025.  *See* Sec. 2, § 19-2.5-801(1)(a)(I), 2021 Colo. Sess. Laws 613.

determine whether the case should be transferred to juvenile court. *Id.* at 441; *see* § 19-2-517(3)(a), C.R.S. 2012.[2]

¶ 8     Papol argued below that the 2012 amendments governed in his case and requested a reverse-transfer hearing, which the district court denied.  He then filed a motion to dismiss his case for lack of statutory authority, arguing that the 1988 statute did not apply and that, because he was fifteen at the time of the alleged offense, his case had to be filed in juvenile court.  The prosecutor opposed the motion, arguing that the 1988 statute applied and, therefore, that Papol's case was eligible for direct filing in district court.  The court denied that motion as well.

¶ 9     The parties reached a disposition in which Papol pled guilty to second degree murder, aggravated robbery, and four crime of violence sentence enhancer counts, with a stipulated sentencing range of forty to sixty years in prison.  The district court sentenced him to a total of sixty years in the custody of the Department of Corrections with five years of parole.

---

[2] Based on the statute's 2021 repeal and relocation, section 19-2-517(3)(a), C.R.S. 2020, is now codified at section 19-2.5-801(4)(a), C.R.S. 2025.

¶ 10    In 2023, Papol filed postconviction motions for relief under Crim. P. 35(a) and (c), arguing, among other issues, that the district court lacked subject matter jurisdiction to hear his case because of the 2012 amendments to the direct file statute.  The postconviction court denied the motions, holding that the district court had jurisdiction over Papol's case.[3]  It reasoned that the 1988 direct file statute applied because the date of the offense, not the date of the filing of the charges, dictated which version of the statute applied. Papol appeals only the postconviction court's jurisdictional ruling.

## II.    Standard of Review

¶ 11    We review de novo a district court's subject matter jurisdiction determination when there is no factual dispute.  *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶¶ 17-18.  And we review de novo questions of law, including a court's statutory interpretation.  *Id.*

## III.    Analysis

¶ 12    Papol contends that the postconviction court erred by concluding that the 1988 version of the direct file statute applied

---

[3] The postconviction court determined that Papol's jurisdictional challenge was not a challenge to his sentence under Crim. P. 35(a) and resolved the issue under Rule 35(c).

and, consequently, argues that the district court lacked subject matter jurisdiction over his case. We agree with the postconviction court's conclusion that the district court had subject matter jurisdiction over Papol's case, but we disagree with how it arrived at that determination.

¶ 13    The analytical rubric matters in this case for two reasons. First, the postconviction court incorrectly relied on *People v. Godinez*, 2018 COA 170M, ¶ 20 — in which a division of this court concluded that the 2012 amendments to the direct file statute do not apply retroactively — for purposes of holding that the 1988 statute applied. Instead, we conclude that the 2012 direct file statute applies. And second, district courts have general jurisdiction over criminal matters, and the mechanism by which a juvenile's case is transferred to the district court or reverse-transferred from a district court to the juvenile court is procedural, not jurisdictional, if the juvenile's age and the enumerated offense charged are within the scope of the direct file statute.

A.    The 2012 Direct File Statute Applies to Papol's Case

¶ 14    In analyzing Papol's jurisdictional claim, the postconviction court first determined that the 1988 version of the direct file statute

8

applied. It did so by applying the reasoning in *Godinez*. In that case, the division held that the 2012 amendments to the statute were not ameliorative or amendatory legislation and thus should not be applied retroactively under *People v. Stellabotte*, 2018 CO 66, ¶ 3. *Godinez*, ¶ 28. Because the postconviction court held that the 1988 version of the direct file statute applied to Papol's case, it concluded that the district court had subject matter jurisdiction.

¶ 15    The Attorney General asserts that the postconviction court's analysis is correct and that the prosecution had authority to direct file charges against Papol in the district court (because he was fourteen years old or older and charged with a class 1 felony). Papol, however, contends that the 2012 version of the direct file statute should have applied because his case was filed in 2018, well after the 2012 revisions (which allowed direct filing of charges only if the juvenile was sixteen or older). He further contends that the postconviction court erred in relying on *Godinez* because its analysis on retroactivity does not apply to his situation. We agree with Papol on both points.

¶ 16    Papol relies on *Bostelman v. People*, 162 P.3d 686, 690 (Colo. 2007), for both contentions. We acknowledge that, in criminal law,

the "general rule is that the date of the offense governs the applicable statute to be applied in charging the offense." *Id.*; *see also People v. Woodward*, 11 P.3d 1090, 1093 (Colo. 2000) (concluding that the statute in effect at the time of the offense controls); *People v. Marlott*, 552 P.2d 491, 494 (Colo. 1976) (requiring a criminal defendant to be sentenced under the statute in effect at the time the offense was committed).

¶ 17    But *Bostelman* does not resolve the precise question here. That case did not address the application of two different versions of the direct file statute in a particular case. Rather, *Bostelman* focused on interpreting section 19-2-517(1)(a)(V), C.R.S. 2005 — which provided that "[a] juvenile may be charged by the direct filing of an information in the district court or by indictment *only when* . . . [t]he juvenile is *fourteen years of age* or older [and] has allegedly *committed a delinquent act that constitutes a felony*" (emphases added) — to determine whether the age of the juvenile at the time the offense occurred or at the time the charges were filed governed. Although the case is not helpful to directly resolve the question presented here, it directs one critical aspect of our analysis: The supreme court held that "[a] juvenile's age at the time

10

the delinquent act occurs . . . determines whether the prosecution can file directly charges in district court." *Bostelman*, 162 P.3d at 692. In other words, it is not the juvenile's age when the prosecution files charges that governs but the juvenile's age when the delinquent act occurred.

¶ 18 Because the postconviction court agreed that *Bostelman* did not resolve the issue, it turned to *Godinez* to resolve whether the 2012 amendments to the direct file statute applied. *Godinez* held that the 2012 amendments to the direct file statute were not ameliorative, amendatory legislation subject to retroactive application. *Godinez*, ¶ 28. As a result, the postconviction court in this case concluded that the 1988 statute controlled.

¶ 19 We again agree with Papol that the postconviction court misapplied *Godinez* to conclude that the 2012 statute should not be applied to his case.

¶ 20 *Godinez* dealt with a juvenile defendant's case that was direct filed under section 19-2-517(1)(b), C.R.S. 2011, allowing the prosecution to file charges in district court against a fourteen- or fifteen-year-old for certain enumerated offenses. The 2012 amendments to the direct file statute eliminated that provision, so

11

the prosecution, under the new law, could direct file an action in district court only if the juvenile was sixteen years of age or older and charged with certain enumerated offenses. *See* § 19-2-517(1)(a), C.R.S. 2012. The 2012 amendments went into effect a few months after the juvenile's case was filed. The juvenile argued that the amendments applied retroactively, entitling him to a reverse-transfer hearing under section 19-2-517(3), C.R.S. 2012. *Godinez*, ¶ 4.

¶ 21 *Godinez*, ¶ 20, first relied on the axiomatic principle that legislation is "presumed to have prospective application unless the General Assembly expresses a contrary intent." *People v. Talley*, 934 P.2d 859, 860 (Colo. App. 1996). This means that "[l]egislation is applied prospectively when it operates on transactions that occur after its effective date, and retroactively when it operates on transactions that have already occurred or [on] rights and obligations that existed before its effective date." *Godinez*, ¶ 21 (quoting *Ficarra v. Dep't of Regul. Agencies*, 849 P.2d 6, 11 (Colo. 1993)).

¶ 22 But *Godinez*, ¶ 15, also acknowledged that the supreme court had recently decided *Stellabotte*. That case held that "ameliorative,

12

amendatory legislation applies retroactively to non-final convictions under section 18-1-410(1)(f), [C.R.S. 2025,] unless the amendment contains language indicating it applies only prospectively." *Stellabotte*, ¶¶ 28-30, 38.  The *Godinez* division, however, concluded that the 2012 amendments were not "ameliorative, amendatory legislation" as contemplated by *Stellabotte*.  *Godinez*, ¶ 28 (quoting *Stellabotte*, ¶ 3).  As a result, the division concluded that the juvenile was not entitled to the benefit of the 2012 amendments to the direct file statute, meaning his case had been properly filed in the district court under the law at the time the case was filed.

¶ 23   Whether we agree with *Godinez*'s outcome is irrelevant because a *Stellabotte* analysis is applicable in situations where the amendatory legislation "became effective at any time before the conviction became final on direct appeal" under section 18-1-410(1)(f).  *Stellabotte*, ¶ 26.  In other words, we agree with Papol that the question of whether the 2012 amendments apply retroactively as amendatory, ameliorative legislation to his case is inapplicable because, although the offense for which he was charged was committed in 1988, the prosecution had not yet filed charges against him when the 2012 amendments were enacted.

13

Therefore, the default rule — that legislation applies prospectively to transactions occurring after the effective date — entitles Papol to the benefit of the 2012 amendments. *See* § 2-4-202, C.R.S. 2025; *Ficarra*, 849 P.2d at 11.

¶ 24    The Attorney General disagrees, arguing that because the murder occurred in 1988, the relevant "transaction" occurred before 2012. But the prosecution's action to file charges against Papol did not occur until 2018. We agree that the substantive law that applies is the law in effect at the time the offense occurred. *See Edwards v. People*, 129 P.3d 977, 984 n.7 (Colo. 2006) ("[A] substantive rule is one that 'alters the range of conduct or the class of persons that the law punishes.'" (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004))). But a law or rule is procedural when "it regulates 'only the *manner of determining* the defendant's culpability.'" *Id.* at 984 (quoting *Summerlin*, 542 U.S. at 353). In the context of this case, when (as discussed below) the changes to the statute affected only the manner in which Papol could be charged with a criminal offense and not whether he could be charged at all, the 2012 amendments were procedural. Therefore, the 2012 direct file statute applies to Papol's case.

¶ 25    For these reasons, the postconviction court erred by relying on *Godinez* to determine that the 1988 direct file statute applied. Because the 2012 amendments govern — and *Bostelman*, 162 P.3d at 692, tells us that the age when the delinquent committed the alleged crime, not when the prosecution filed charges, controls — the prosecution should have filed Papol's case in juvenile court under section 19-2-517(1)(a)(I), C.R.S. 2012, since Papol was fifteen in 1988. But this determination does not end our inquiry. We next turn to Papol's claim that the district court lacked subject matter jurisdiction.

B.    The District Court Had Subject Matter Jurisdiction

¶ 26    We start by revisiting *Godinez*'s analysis dealing with jurisdiction. In addition to contending that the 2012 amendments retroactively applied to him, the juvenile in *Godinez* also argued that the district court had been divested of jurisdiction over his case when the General Assembly increased the direct filing age for juveniles from fourteen to sixteen years or older. *Godinez*, ¶ 19.

¶ 27    But the division rejected this argument, holding that "[a]mending procedures by which jurisdiction is obtained is not the same as removing jurisdiction entirely," *id.* at ¶ 24, because the

"district court's subject matter jurisdiction over [certain-aged] defendants does not derive from the direct-file statute," but rather from the state's constitution, *id.* at ¶ 23. *See* Colo. Const. art. VI, § 9(1) ("The district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and *criminal cases*, except as otherwise provided" in the constitution. (emphasis added)).

¶ 28    Papol is not entirely wrong that, in some instances, the district court may not have subject matter jurisdiction over a juvenile. But this principle is more nuanced than it may appear at first blush. As we discuss below, if the prosecution files a juvenile's case in district court *and* the juvenile is not age eligible *or* the offense is not an enumerated offense in the direct file statute for which the juvenile is charged, the district court lacks subject matter jurisdiction over the action because the juvenile court has exclusive jurisdiction over certain aged juveniles for nonenumerated offenses. To put this in context, we first turn to *Sandoval*, ¶¶ 16-17, which provided a historical overview of Colorado's direct file statute in the Children's Code.

¶ 29    *Sandoval* noted that Colorado was a pioneer in creating a juvenile justice system, with the county courts in the 1960's having jurisdiction of "delinquent children" aged sixteen years or younger who violated state or municipal laws, except for Denver, which had a separate juvenile court under the state constitution. *Id.* at ¶ 25 (quoting Ch. 85, secs. 1-2, 1903 Colo. Sess. Laws 178-79). In 1963, voters passed a constitutional amendment that went into effect in 1965, "vest[ing] the district courts with original jurisdiction in 'all civil, probate, and criminal cases.'" *Id.* at ¶ 26 (quoting Ch. 313, sec. 1, 1963 Colo. Sess. Laws 1050). The General Assembly enacted implementing legislation in 1964, ostensibly giving the City and County of Denver Juvenile Court "exclusive jurisdiction" over cases in which a child was under sixteen years of age and charged with a "*crime* of violence punishable by death or life imprisonment." *Id.* at ¶ 27 (quoting Ch. 46, sec. 3(3), 1964 Colo. Sess. Laws 438).

¶ 30    The supreme court recognized that "it has long been the rule that the Denver Juvenile Court . . . has exclusive jurisdiction, for example, in delinquency and dependency matters." *Garcia*, 403 P.2d at 219. But it nonetheless invalidated the 1964 statute because "the General Assembly's attempted grant of exclusive

jurisdiction to the juvenile court over *crimes* charged against children under sixteen was unconstitutional." *Sandoval*, ¶ 28 (emphasis added) (citing *Garcia*, 403 P.2d at 218). *Garcia* reasoned that the 1964 statute conflicted with the constitution's general grant of jurisdiction to district courts in all criminal cases. 403 P.2d at 218; *see Sandoval*, ¶ 28.

¶ 31   The General Assembly responded to *Garcia* by passing a new law in 1967 that provided exclusive jurisdiction to the juvenile court over proceedings involving juveniles — children between ten and seventeen years old — who could be adjudicated delinquent by violating a state or federal law, instead of being prosecuted for crimes. *Sandoval*, ¶ 29 ("[T]he 1967 statute referred to *violations of law* by children, rather than crimes."). The 1967 legislation was a precursor to the 2012 direct file statute, allowing a child to be charged with a felony only if "(1) the juvenile court certified the child to be held for criminal proceedings in the district court or (2) a child sixteen years of age or older was charged in district court with a crime of violence punishable by death or life imprisonment." *Id.* at ¶ 30 (citing Ch. 443, sec. 1, § 22-1-4(4)(a)-(b), 1967 Colo. Sess. Laws 997).

¶ 32    The supreme court upheld the 1967 legislation in *People ex rel. Terrell v. District Court,* 435 P.2d 763, 766 (Colo. 1967). We pause for a moment to discuss *Terrell* because it is important to understand that, in that case, when the supreme court used the word "jurisdiction," it meant that the district court *lacked* subject matter jurisdiction over that juvenile's case. We provide a more detailed explanation of *Terrell* below to demonstrate that it is not contrary to our holding today.

¶ 33    In *Terrell,* the juvenile, who was fifteen at the time of the alleged offense, was charged in the district court with assault with a deadly weapon. *Id.* The juvenile filed a motion to dismiss, requesting that his case be transferred or dismissed on the basis that "because of his age, the only proceeding which could be brought against him was [a] delinquency proceeding in the [juvenile court]." *Id.* at 764. The court in *Terrell* determined that the 1967 statute barring juveniles sixteen or younger from being prosecuted with felonies was constitutional because the General Assembly "has the power to create and define crimes, subject of course to any applicable constitutional limitations." *Id.* at 765. And "[a]s a corollary, the [General Assembly] may within reasonable limits fix

19

the age below which there can be no criminal responsibility." *Id.*
Thus, the court held that the statute was inapplicable because the
juvenile in *Terrell* was fifteen at the time the offense occurred, and
"the legislative intent was that a child under sixteen years of age
under no circumstance was to be charged with the commission of
a felony." *Id.* at 765-66. In other words, the juvenile in *Terrell*
could only be adjudicated delinquent for what the 1967 law and
*Sandoval* referred to as his "violations of law." *Sandoval*, ¶ 29
(emphasis omitted). This meant the district court lacked subject
matter jurisdiction over his case.

¶ 34    *Sandoval* elaborated on the distinction between the juvenile
court having subject matter jurisdiction over delinquent acts and
the district court having subject matter jurisdiction over criminal
prosecutions. There, the issue was whether a juvenile's case was
improperly direct filed in district court because the offense for
which the juvenile was charged was not enumerated, and he was
fifteen at the time the offense occurred. *Id.* at ¶ 19 (stating that the
parties conceded, and the division agreed, that neither of the
offenses for which the juvenile was charged were crimes of violence

20

as enumerated in the direct file statute in effect when the offenses occurred).

¶ 35    The *Sandoval* division reasoned that the district court's "jurisdiction over direct file cases against juveniles constitutes subject matter jurisdiction," while the district court "lacks subject matter jurisdiction over cases involving juveniles who have committed delinquent acts." *Id.* at ¶ 53. A district attorney "may invoke a district court's subject matter jurisdiction over enumerated types of cases under the direct file statute," and "[*b*]*ecause* direct file cases charge crimes, as opposed to delinquent acts, the enumerated crimes constitute a class or type of criminal cases and thus fall within the district courts' subject matter jurisdiction." *Id.* (emphasis added).

¶ 36    Papol's argument that the district court lacked subject matter jurisdiction in his case depends, in part, on his view that jurisdiction was not "invoked" because the statutory prerequisites of the direct file statute were not satisfied. This position appears to be supported by language in *Sandoval* that says, "When the [district court]'s jurisdiction over a case under the direct file statute has not been properly invoked, the subject matter of the case remains

21

within the exclusive jurisdiction of the [juvenile court] to adjudicate delinquency proceedings." *Id.* But the issue in *Sandoval* was similar to the situation in *Terrell*: Because of the age of the juveniles and because the offenses they were charged with were not enumerated offenses in the direct file statutes in effect during the relevant time periods, the juveniles could not be held criminally liable for their conduct.

¶ 37 *Sandoval* was correct when it concluded that "the jurisdictional defect ar[ose] from the type of case in which jurisdiction was asserted," *id.* at ¶ 54, meaning the juvenile in *Sandoval* could only be adjudicated delinquent for his violation of law in the juvenile court. In short, *Terrell* and *Sandoval* stand for the legal proposition that a district court lacks subject matter jurisdiction over a case involving a juvenile's violation of the law that the General Assembly intended only to be subject to a delinquency proceeding rather than a criminal case.

¶ 38 Papol's situation is not the same as the juveniles' circumstances in those cases. He acknowledges that, even under the 2012 direct file statute, his case was eligible for transfer to the district court. *See* § 19-2-518(1)(a)(I)(B), C.R.S. 2012 (stating that

22

upon filing a petition, a juvenile's case could be transferred to district court if the juvenile was "[f]ourteen years of age or older" at the time of the commission of the alleged offense and was alleged to have "committed a delinquent act that constitutes a felony").[4] Nonetheless, he contends that because he did not receive a transfer hearing in juvenile court under section 19-2-518(1)(a)(I)(B)(II), the juvenile court had exclusive jurisdiction over his case, and the district court lacked subject matter jurisdiction.

¶ 39    We disagree.  A juvenile's request for, and a juvenile court's grant of, a transfer hearing — though important safeguards to protect juveniles — are procedural mechanisms, not jurisdictional prerequisites, for a juvenile's case to be transferred to a district court when the juvenile is age eligible and alleged to have committed an offense enumerated in the direct file statute.  In other words, Papol's situation did not require "invoking" the subject matter jurisdiction of the district court because the 2012 amendments made his age and the offense for which he was

---

[4] Based on the statute's 2021 repeal and relocation, section 19-2-518(1)(a)(I)(B), C.R.S. 2020, is now codified at section 19-2.5-802(1)(a)(I)(B), C.R.S. 2025.

23

charged eligible for transfer to district court for criminal prosecution. The General Assembly's passage of the 2012 amendments contemplated that juveniles similarly situated to Papol could be adjudicated delinquent for a violation of the law in juvenile court *or* could be prosecuted for, and convicted of, a crime in district court based on his age and the charged offense. In this particular situation, the court's compliance with the statutory requirements to transfer his juvenile case to district court is a procedural safeguard, not a jurisdictional prerequisite, under section 19-2-517(1)(a), C.R.S. 2012.

¶ 40 Our holding is not intended to minimize the importance of the procedural mechanisms the General Assembly has enacted to protect juveniles being charged with criminal prosecutions. Indeed, the prosecution should be aware that, if a juvenile's case is direct filed in district court and the juvenile is not both age eligible and charged with an enumerated offense in the direct file statute, *Terrell* and *Sandoval* compel a conclusion that the district court lacks subject matter jurisdiction over that action. But if the district court already has subject matter jurisdiction by virtue of section 19-2-517(1), C.R.S. 2020 (current version at § 19-2.5-801(1)), any error

relating to the district court's or the juvenile court's compliance with section 19-2-518, C.R.S. 2020 (current version at § 19-2.5-802, C.R.S. 2025), is procedural and does not affect the district court's subject matter jurisdiction.

### C. Application to Papol's Case

¶ 41 Because the 2012 amendments to the direct file statute apply, Papol's case should have been filed in juvenile court. But because he was fifteen at the time of the alleged offense and he was charged with a class 1 felony, the prosecutor could have sought to have his case transferred to the district court under section 19-2-518(1)(a)(I)(B), C.R.S. 2012. Therefore, the district court had subject matter jurisdiction over his case by virtue of section 19-2-517(1)(a)(I), C.R.S. 2012, which made Papol an eligible age to be held criminally liable for first degree murder. And because this error is procedural, not jurisdictional, we conclude that Papol waived his claim when he voluntarily, knowingly, and intelligently entered into his plea agreement. *See Neuhaus*, ¶ 8; *Butler*, 251 P.3d at 520.

¶ 42 As a result, the postconviction court's order denying Papol's request for postconviction relief is affirmed, albeit on different grounds. *See Thompson*, ¶ 55 n.7.

## IV. Conclusion

¶ 43 We affirm the postconviction court's order.

JUDGE PAWAR and JUDGE GOMEZ concur.